353 So.2d 1071 (1977)
Gregory T. WHITTEN, Plaintiff-Appellee,
v.
EMPIRE FIRE AND MARINE INSURANCE COMPANY, Defendant-Appellant.
No. 13394.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1977.
*1072 Hayes, Harkey, Smith & Cascio by Thomas M. Hayes, Jr., Monroe, for defendant-appellant.
Whitten & Blake by Leon H. Whitten, Jonesboro, for plaintiff-appellee.
Before BOLIN, MARVIN and JONES, JJ.
BOLIN, Judge.
The sole issue on appeal is whether the trial court correctly decided that uninsured motorist coverage, after the 1974 amendment to the Uninsured Motorist Statute, is tantamount to excess coverage over the tortfeasor's liability policy limits. We agree with the trial court and affirm its judgment.
The district judge wrote a comprehensive and scholarly opinion. Since the opinion adequately and correctly sets forth the law and the facts, we adopt that portion pertinent to the issue on appeal:
"On November 24, 1975, Gregory T. Whitten, while operating a motorcycle on a public highway in Lincoln Parish, Louisiana, was involved in a head-on collision with a vehicle driven by Ronnie Cravens and sustained serious injuries. At the time the Cravens automobile was covered by a liability insurance policy issued by Commercial Union Insurance Company with limits of $5,000.00 for injury to one person. Whitten had been issued a contract of insurance by Empire Fire and Marine Insurance Company (hereinafter referred to sometimes simply as `Empire') which provided `uninsured motorist' coverage with limits of $5,000.00 for injury to one person.
"In consideration of the payment of $5,000.00 to him under the above described liability policy, Whitten granted a full release to Cravens and his liability carrier and demanded from Empire the sum of $5,000.00 under the `uninsured motorist' section of his policy. When the claim was rejected by Empire upon the advice of counsel, Whitten filed this suit against Empire for `uninsured motorist' benefits, . . . . The defendant answered, admitting the `uninsured motorist' coverage, but averred that it was entitled to recover from plaintiff the amount of his settlement with Cravens and Commercial Union and specially pled the defense of set-off. Urged as a second special defense was the plea of estoppel based upon the assertion that by his settlement with the tortfeasor and his liability carrier the plaintiff had denied defendant's right of subrogation. Defendant also filed a reconventional demand predicated basically upon the same rationale as the plea of set-off.
"The parties waived a trial on the merits in this matter and submitted their dispute upon a written stipulation reciting essentially the facts set forth above, with the added agreement that the accident was due solely to the negligence of Cravens and that plaintiff's injuries were such that he would have been entitled to recover damages in excess of $10,000.00.
"The legal question posed by this litigation is whether the defendant is entitled to recover from plaintiff, or receive credit for, the $5,000.00 paid to plaintiff by Commercial Union on behalf of Cravens in settlement of plaintiff's claims against them. If this question is answered in the affirmative, defendant owes plaintiff nothing since its policy limit was $5,000.00. Resolution of that issue mandates a review of the history of Louisiana's statutory provisions dealing with `uninsured motorist' coverage.
*1073 "Act 187 of 1962 (La.R.S. 1406 D) inaugurated `uninsured motorist' (referred to hereinafter simply as `UM') protection in Louisiana with the requirement that automobile liability insurers issue a minimum UM coverage of `5/10' unless the insured rejected the coverage. In general an `uninsured motor vehicle' was defined as one which was not covered by liability insurance. Section D(4) of the statute contained the following language:
In the event of payment to any person under the coverage required by this Section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer.
"The UM statute was amended by Act 137 of 1972 to expand the definition of `uninsured motor vehicle' to include a vehicle with liability coverage less than the UM coverage carried by the insured, thus allowing the insured to recover the difference between the underinsured tortfeasor's liability limits and his own damages up to his UM limits.
"The definition of `uninsured motor vehicle' was again changed, by Act 154 of 1974, to include an insured motor vehicle with liability coverage less than the amount of the damage which the injured insured or his passengers were entitled to recover. The effect of this change was discussed as follows in 35 La.L.Rev. 618:
The change in the definition of uninsured motor vehicle is important because all the insured must now establish is that the damages he has suffered are greater than the liability limits of the tortfeasor. In effect, UM coverage is now excess coverage over the tortfeasor's BI liability limits and no longer operates as an absolute limit of recovery. For example, if a plaintiff proved damages of $8,000 and had $5,000 UM coverage and his tortfeasor had BI limits of $5,000, there could be no recovery under either the 1962 statute or the 1972 statute. Assuming the tortfeasor's insurer was solvent, the plaintiff would be denied recovery under Act 187 of 1972 [1962] merely because the tortfeasor was in fact insured. Recovery would also be denied under the 1972 amendment because the tortfeasor's BI liability coverage was not less than the plaintiff's UM coverage. However, recovery of $3,000 will be allowed the insured under the 1974 amendment because this amount is the difference between the insured's damages and the BI limits of the tortfeasor. Added to the $5,000 BI coverage received from the tortfeasor's insurer, the UM recovery will thus fully compensate the plaintiff.
"In order to conform to and implement the 1974 amendment to the UM statute the following endorsement was added to plaintiff's contract of insurance:
It is agreed that:
1. (a) The definition of `uninsured highway vehicle' shall also include a highway vehicle for which the owner or operator has a bodily injury liability bond or insurance policy applicable at the time of the accident but the limits of such bond or policy are insufficient to pay the full amount the insured is legally entitled to recover for damages because of bodily injury caused by the accident;
(b) in the event the owner or operator has such a bodily injury liability bond or insurance policy applicable to the accident, this insurance shall apply as excess insurance over such liability bond or insurance policy, up to the amount the insured is legally entitled to recover for damages because of bodily injury caused by the accident subject to the limits specified for this insurance.
2. (a) Any amount payable under the terms of this insurance because of bodily injury sustained in an accident by a person who is an insured under this insurance shall not be reduced by any sums paid on account of such bodily injury by or on behalf of

*1074 (i) the owner or operator of the uninsured highway vehicle and
(ii) any other person or organization jointly or severally liable together with such owner or operator for such bodily injury including all sums paid under liability coverage;
(b) that part of the `Limits of Liability' provision pertaining to such a reduction is amended accordingly.
3. The company shall not be obligated to make any payment because of bodily injury to which this insurance applies and which arises out of the ownership, maintenance or use of an uninsured highway vehicle until after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements.
"Examination of Louisiana jurisprudence fails to reveal any reported case dealing with the precise legal question presented in this litigation. Defendant understandably relies heavily upon Nicholson v. Casualty Reciprocal Exchange, 332 So.2d 906 (La. App. 2d Cir., 1976) which involved a similar factual situation. The claimant was injured in an accident caused by the negligence of a party who had liability insurance with $5,000.00 limits and the claimant had UM coverage of $10,000.00. The litigants stipulated that plaintiff had sustained injuries for which he would have been entitled to recover $15,000.00 in damages. The tortfeasor's liability carrier deposited $5,000.00 into the court registry and the UM carrier did likewise, but refused to pay the additional $5,000.00 demanded by plaintiff. In the words of the court,
The sole question for review is whether the enforcement of the subrogation provision of the uninsured motorist provision of the State Farm policy by allowing it to receive credit for the amount received by Mrs. Nicholson from the insurer of the tortfeasor, unlawfully deprives her of an additional amount of uninsured motorist coverage for which a premium was paid under the second policy issued to plaintiffs by State Farm.
"Fundamental to a resolution of the issue was the court's preliminary determination that the accident occurred prior to the effective date of the 1974 amendment and that, consequently, the 1972 amendment was applicable. The court then concluded:
The plaintiffs had provided themselves with a total of $10,000 uninsured motorist coverage for any one person. The negligent driver, Dockery, was insured for the sum of $5,000 for personal injury to any one person. He was therefore underinsured in so far as plaintiff, Stella Nicholson, was concerned to the extent of $5,000. Payment of this amount by State Farm has given Mrs. Nicholson the full protection which the contracts of insurance and the uninsured motorist statute require.
"This result was also deemed to be consistent with the upholding of defendant's subrogation rights under Section D(4) of the UM act.
"A finding that the 1972 amendment rather than the 1974 amendment governed was also a crucial factor in Doucet v. Insurance Company of North America, 302 So.2d 731 (La.App. 3d Cir., 1974). In that case the tortfeasor had liability coverage for injuries to more than one person of $10,000.00 and plaintiff had UM coverage for injuries to more than one person of $10,000.00. The tortfeasor's liability carrier paid its policy limits and was released and plaintiff sought to recover an additional sum under his UM coverage. Recovery was denied under the provisions of the 1972 amendment, but the court added:
We are inclined to agree with counsel that plaintiff's claim would be covered if the statute as amended in 1974 had been in effect at the time of the accident. However, it was not.
"Defendant argues forcefully that, despite amendments to the UM act, Section D(4) thereof granting indemnity or subrogation rights to the UM carrier remains unchanged, and cites the rationale of the Nicholson case as decisive in the disposition of this litigation. It is obvious that, unless the 1974 amendment made a significant *1075 change with reference to the UM carrier's indemnity rights, defendant's position must be accepted. At the same time, as will be pointed out, recognition of the UM carrier's subrogation rights could render the 1974 amendment nugatory. As pointed out in Peyrefitte v. Harvey, 312 So.2d 159 (La. App. 1st Cir., 1975):
There is a presumption that all legislative acts are enacted for some definite purpose and the Courts in construing them must endeavor to give an interpretation that will give them effectiveness and purpose, rather than one which makes them meaningless and useless. (Citations omitted)
"An analysis of the public purpose implicit in the original UM act and subsequent amendments is required to ascertain whether they present some coherent legislative scheme or design. This court is of the opinion that the critical clue is found in the evolving definition of `uninsured motor vehicle' found in the various acts.
"In the original 1962 enactment a UM vehicle was generally one which was not covered by any liability insurance. The public purpose was to give the innocent party some measure of protection through the medium of UM coverage. Therefore, he could under appropriate circumstances collect from his UM carrier which was permitted, in turn, to proceed against the uninsured tortfeasor. Logically, the innocent party would not be permitted to subvert this purpose by sabotaging his carrier's right of indemnity by a prior unilateral settlement with the tortfeasor, since this would constitute a prohibited double recovery.
"By redefining an `uninsured motor vehicle' as one where the liability coverage was less than the UM coverage, the tacit public purpose of the 1972 amendment was to enable recovery by the innocent party to the accident up to the limits of his UM coverage only. For example, as pointed out in the Nicholson case, supra, the negligent driver was `underinsured insofar as plaintiff, Stella Nicholson, was concerned to the extent of $5,000.00.' However, it is significant that this case did not hold that by withdrawal of the $5,000.00 deposited by the tortfeasor's liability carrier in the court registry (which was the equivalent of a settlement and release) the plaintiff had frustrated his UM carrier's subrogation rights and was consequently not entitled to any recovery from that carrier. As formulated by the court, the only question was whether enforcement of the subrogation clause required the UM carrier to receive credit for the sum paid by the tortfeasor's liability carrier. As a practical matter, this case simply enforced the intent of the 1972 amendment that the innocent party not receive in toto more than his UM limits.
"The only logical conclusion to draw from the language of the 1974 amendment, redefining `uninsured motor vehicle' as one on which the liability insurance coverage was less than the damages sustained by the innocent party, is that it was designed to remove the limits of recovery fixed by the 1972 legislation and permit full recovery of damages in appropriate cases. This understanding is reflected in the terms of the endorsement added to plaintiff's contract of insurance by defendant after passage of the 1974 amendment. In substance, where the tortfeasor had liability coverage which was less than the damages suffered by the innocent party, the latter's UM coverage because `excess' after his settlement with the tortfeasor's liability carrier. However, if the defendant's stated position in this case is carried to its logical conclusion, i. e., that the UM carrier is entitled to credit for settlement proceeds received by plaintiff, the UM coverage never becomes `excess'. In effect, therefore, the 1974 amendment becomes meaningless and the law reverts to the 1972 amendment under which the UM coverage became the limits of recovery.
"In Hebert v. Green, 311 So.2d 223 (La. 1975), the Louisiana Supreme Court considered the validity of the `consent to settle clause' under the UM section of a contract of insurance with reference to a settlement made with an insured co-tortfeasor. Holding adversely to the UM carrier, the court stated:

*1076 The mandatory uninsured motorist coverage of R.S. 22:1406, subd. D may not be thwarted by policy exclusions serving no legitimate purpose
. . . . .
This provision (R.S. 22:1406, subd. D) enunciating the State's public policy as regards the required minimum uninsured motorist coverage limits, has been applied so as to deny effect to other policy provisions which would deny or reduce the mandated coverage.
"To summarize, this court finds that a consideration of present Louisiana law dealing with UM coverage, the contract of insurance existing between these parties, and the facts of this particular case, leads to the conclusion that plaintiff is entitled to the proceeds of his settlement with Cravens' liability carrier and also to the full $5,000.00 owed by defendant under its UM coverage, since plaintiff's damages exceed this combined sum of $10,000.00. Defendant is not entitled to `set-off' the $5,000.00 received by plaintiff from Commercial Union since this would violate the purpose of the 1974 amendment and would also be inconsistent with the endorsement to the contract of insurance which specified that in certain circumstances the UM coverage would constitute `excess' insurance. Consequently, to the extent that Section 4(D) of the UM statute is inconsistent with the latest expression of legislative intent coupled with the parties' implementation of that public purpose as reflected in the modification of their contract of insurance, that section of the statute pertaining to indemnity or subrogation must be deemed invalid."
The remainder of the opinion is not relevant to the issue on appeal and has been omitted.
The judgment in favor of plaintiff is affirmed at defendant's cost.