HALL, Judge.
This suit for damages arose out of a three-car collision which occurred on October 23, 1974 at the intersection of Spring and Texas Streets in Shreveport. All three vehicles were headed north on Spring. Plaintiff Hughes’ vehicle, stopped for a red light at the intersection, was struck from the rear by Cox’s vehicle which was struck from the rear by Iverson’s vehicle. The trial court found the accident was caused solely by the negligence of Cox. Judgment was rendered in favor of plaintiff against Cox and his insurer, State Farm Mutual Automobile Insurance Company, for $8,823.20. Plaintiff’s demands against Iver-son, his employer C. L. Morris, and their insurer, National Indemnity Company, were rejected. Plaintiff’s demand against his uninsured/underinsured motorists insurer, Fidelity & Casualty Company of New York, were also rejected since the award was within State Farm’s policy limits of $10,000.
Plaintiff appealed complaining of quantum. Fidelity & Casualty appealed complaining of the trial court’s failure to find Iverson negligent. Cox and State Farm answered the appeal claiming the accident was caused solely by Iverson’s negligence and, alternatively, by the joint negligence of Cox and Iverson. We affirm on liability and increase the award for damages, which has the effect of casting Fidelity & Casualty for the excess over $10,000.
The trial court’s findings on negligence, which are supported by the evidence and which we adopt, are as follows:
“. . . The Court finds this accident occurred solely from the negligence of defendant, Terry L. Cox. The Hughes’ vehicle was in the 2d from left lane, authorized to turn left or go straight. Some distance to the rear and in the same lane was a large truck owned by defendant, C. L. Morris, and operated by defendant, Ray Iverson. Cox was in the left lane, authorized only to turn left. Wanting to go .straight, Cox changed lanes at the last moment, cutting in front of Iverson and creating the situation which caused the accident. The Court holds that Ray Iverson is free from fault, his actions in no way contributing to the cause of this accident. . . . ”
Plaintiff does not complain on appeal of the trial court’s finding that Iverson was free from fault. State Farm and Fidelity & Casualty contend that Iverson was negligent in driving too fast under the circumstances and that he would not have been able to stop without striking plaintiff even if Cox had not changed lanes. The contention is speculative and without substantial support in the record. The evidence supports the trial court’s finding that the accident was caused solely by the negligence of Cox and that Iverson was free from negligence.
The trial court’s findings on plaintiff’s injuries, which are supported by the evidence and which we adopt, are as follows:
*1389 “The difficult question for the Court to decide is quantum. Hughes had 3 accidents and 3 injuries prior to this accident: a lifting injury on the job in 1971; a pedestrian-auto accident while on the job in 1973; and a job-related auto accident in 1974.
“Regardless of the number of prior injuries, the medical testimony is clear; at the time of the 1975 accident, Hughes was suffering from a permanent disability of the body as a whole of 35%.
“Also, it is undisputed that the 1975 accident caused an additional 5% permanent disability of the body as a whole. The following facts relate to the injuries from the accident and the additional 5% disability-
“Hughes was placed on medication and will have to continue this treatment for the remainder of his life. Dr. Dean prescribed a neck collar and back brace. He had plaintiff performing exercises and utilizing a neck traction device set up in a doorway at home. In addition to 39 physical therapy sessions at Warrington Plaza Therapy Center, Hughes, made approximately 17 visits to Dr. Dean.
“In March of 1977, Hughes spent 6 days at Schumpert Medical Center for myelo-gram testing. No surgery was recommended following this testing and in April, Dr. Winston Brown examined Hughes, finding no nerve root irritation. Dr. Dean’s final diagnosis upon Hughes’ release from Schumpert was ‘cervical spondylosis with some disc protrusion at the C3 — C4, and C4— C5 interspace on the left.’ See Exhibit P — 5, Page 3. Cervical spondylosis is defined as abnormal immobility and consolidation of a vertebral joint in the neck.
“On January 11, 1978, Hughes reached maximum improvement and was discharged by Dr. Dean. On February 1, 1978, Hughes retired, but testified he still works about 6 hours a day.
“Plaintiff’s testimony was that he was working and was free from pain at the time of the 1975 accident. However, it is noted he saw one of Dr. Dean’s partners about 2 months before this accident and, at that time, was still experiencing soreness from the May 29, 1974, accident. See P-3, progress report dated August 25, 1975. He was to be ‘checked back’ around the time of the current accident.
“While the Court finds that Hughes continues to experience some pain at this time, it is to be noted that from the accident on October 23,1975, until retirement on February 1,1978, plaintiff missed work only the 6 days he was in Schumpert. Additionally, he worked 2 shifts daily, IIV2 hours, until his retirement . . . .”
The trial court awarded plaintiff $5,000 for his personal injuries and $3,823.20 for special damages, which included $1,200 for future medicine expense.
The award of $5,000 for general damages is clearly on the low side. It is a close call on whether the award is so low as to be below the range of the trial court’s much discretion. The trial court obviously did not fully accept plaintiff’s testimony that he had completely recovered from the third accident and resulting cervical disc surgery, in light of his complaint of soreness about two months prior to the last accident and since he had not yet been discharged from treatment of the prior injury. In view of plaintiff’s age (62 at the time of the accident) and prior injuries, his continued pain (past, present and future) was and is not necessarily fully attributable to the last accident. Another minimizing factor is the fact that plaintiff never missed a day of work after the accident, except six days while he was in the hospital for the myelogram.
Giving weight to the minimizing factors noted above and giving weight to the discretion of the able trial judge, this court nevertheless finds the award too low. The trial court found that as a result of the accident, plaintiff was under treatment for over two years. He was required to wear a neck collar and a back brace. He was required to do exercises and use traction at home. He underwent 39 therapy treatments, made 17 visits to his treating physician, and spent six days in the hospital undergoing a myelogram. He has a 5 percent additional permanent disability attributable to this accident. The cervical sprain *1390 received in the accident aggravated plaintiff’s preexisting condition, with the final diagnosis of plaintiff’s condition being cervical spondylosis with some disc protrusion at two levels. Plaintiff will be required to take pain medication for the remainder of his life. Plaintiff had incurred medical expenses at the time of trial of about $2,500.
All three judges of this panel agree that considering the facts found by the trial court, the minimizing factors noted by the trial court, and similar cases as guidelines, each would award at least $7,500 for general damages. Based on the collective judgment of the panel, we conclude $7,500 represents the lowest amount within the range of discretion and increase the award to that amount.
Appellate review of relatively small damage awards is difficult. The appellate court may believe the trial court’s award is too low or too high; yet to decrease or increase the award to the low or high range of discretion may not involve many dollars, and, consequently, may appear to be “nitpicking” the trial court’s discretion. Still, relatively small awards must be reviewed under the same standards as larger awards and where the dollar amount awarded falls below or above what the appellate court views as the range of discretion, an adjustment must be made.
Plaintiff also contends that it was established that plaintiff had spent an average of $21.44 per month for medicine and based on his life expectancy the award for future medicine expense should be $2,855.81 rather than $1,200 as awarded by the trial court. Although the average figure for medicine expense over the previous two-year period is correct, the evidence does not establish with precision the exact amount per month that plaintiff is presently spending or will spend in the future for medicine. The award of $1,200 is reasonable under the evidence and will not be disturbed.
The modification made by this court increases the total award to $11,323.20. State Farm’s policy limit is $10,000. The excess falls on the uninsured/underinsured motorists carrier, Fidelity & Casualty: Cox is liable for the full amount in solido with the insurance companies.
Fidelity & Casualty argues that it should be entitled to the proceeds of plaintiff’s judgment against Cox and State Farm to the extent of its liability to plaintiff under subrogation provisions of the policy and LSA-R.S. 22:1406 D(4). To allow the uninsured motorists insurer such recovery out of the judgment proceeds up to the tort-feasor’s policy limits would render its underinsured motorists coverage under LSA-R.S. 22:1406 D(2)(b) nugatory and meaningless. Whitten v. Empire Fire & Marine Ins. Co., 353 So.2d 1071 (La.App. 2d Cir. 1977). Fidelity & Casualty is entitled to the proceeds of plaintiff’s judgment over and above the amount of the liability coverage, $10,000, to the extent of any payment made by Fidelity & Casualty to plaintiff under the uninsured motorist coverage and the judgment against it rendered herein.
For the reasons assigned, the judgment of the district court is .modified and recast as follows:
It is ordered, adjudged and decreed that there be judgment in favor of plaintiff, Roosevelt Hughes, in the amount of $11,-323.20, together with legal interest thereon from date of judicial demand until paid,, against the defendants as follows:
(1) Against defendant, Terry L. Cox, for the full amount of the judgment, in solido with the insurance companies against whom judgment is also rendered;
(2) Against defendant, State Farm Mutual Automobile Insurance Company, in the amount of $10,000, plus legal interest thereon;
(3) Against defendant, Fidelity & Casualty Company of New York, in the amount of $1,323.20, plus legal interest thereon, said insurance company being entitled to the proceeds of the judgment against Terry L. *1391 Cox over and above $10,000 plus legal interest to the extent of any payment made by said insurance company hereunder.
Defendants, Terry L. Cox and State Farm Mutual Automobile Insurance Company, shall have credit for the amount of $9,772.47 paid into the registry of the court on May 5, 1978.
Plaintiffs demands against C. L. Morris, Ray Iverson, and National Indemnity Company are rejected and dismissed.
All costs of this proceeding, including the cost of appeal, are assessed against defendants, Terry L. Cox and State Farm Mutual Automobile Insurance Company, in solido.
Modified and recast.