[No. 51131–4. En Banc. October 10, 1985.]

ROBERT ELOVICH, *Individually and as Guardian,* ET AL, *Respondents,* v. NATIONWIDE INSURANCE COMPANY, *Appellant.*

544

*Leavy, Schultz & Sweeney, P.S.,* by *John G. Schultz, George Fearing,* and *Andrew C. Bohrnsen,* for appellant.

*Critchlow & Williams,* by *Robert D. Merriman* and *Rembert Ryals,* for respondents.

CALLOW, J.—The plaintiffs, Robert Elovich, et al, seek payment from Nationwide Insurance Company under Elovich's underinsured motorist (UIM) coverage for injuries they sustained in an automobile accident. Nationwide appeals the entry of summary judgment against it and argues that the coverage does not apply because the plaintiffs improperly settled their case against some of the defendants in the tort action.

On July 12, 1981, six persons were riding in a Datsun automobile on Riverside Drive in West Richland, Washington. As they crossed Route 224, they collided with a pickup truck. That vehicle was driven by Jimmy Dale Sweeny, who was intoxicated, uninsured and had negligible financial assets. Two of the six persons died, two suffered serious injuries, and two were less seriously injured. The occupants of the automobile were:

OCCUPANTS OF DATSUN AUTOMOBILE

| NAME | ACTIVITY | INJURY | INSURANCE | SETTLEMENT |
|---|---|---|---|---|
| Robert Elovich | Driver of Datsun | Injured | UIM coverage with Nationwide Ins. Co. | $50,000 for his injuries and for loss of wife's services |
| Allessandra Elovich | Wife of driver | Injured brain damage | * * * | $250,000 plus $5,500 per mo. for 5 yrs. commencing 2 yrs. after settlement, thereafter $6,000 per mo. for life |
| Andrew Prounchick | Owner of Datsun | Injured | UIM coverage with Mutual of Enumclaw w/$100,000 limit to 1 occurrence. Mutual paid full $100,000 to plaintiffs | $50,000 for injuries and death of wife |
| Alyce Prounchick | Wife of owner | Killed | * * * | Included in amount paid husband Andrew |
| Genevive Beale | Passenger | Killed | * * * | $25,000 to estate |
| Kimberly Elovich | Daughter of Robert | Critical injuries | * * * | $20,000 at settlement plus $10,000 for 5 yrs. w/first part |

1 yr. from date of
settlement plus
$20,000 at age 23;
$30,000 at age 27 &
$40,000 at age 30

The driver of the Datsun was Robert Elovich who had been permitted to drive it by the owner, Andrew Prounchick. Elovich carried an insurance policy with Nationwide Insurance Company with UIM coverage. The Nationwide policy covering Elovich provided coverage if the car the insured (Elovich) was driving was involved in an accident with an underinsured motor vehicle. The limits of the underinsured motorist coverage were $100,000 for each individual and $300,000 for any one occurrence.

The injured parties sued for damages. They named as defendants: Sweeny, the City of West Richland and the State of Washington for hazardous road design, and Nissan Motors Corp. for automobile design defects. The plaintiffs subsequently settled their claims with the City, State, and Nissan, and took a voluntary nonsuit against Sweeny. All defendants except Sweeny received a release. Nationwide never received notice of the settlement negotiations or the settlement hearing held pursuant to RCW 4.22.060 which reads in part:

(1) A party prior to entering into a release, covenant not to sue, covenant not to enforce judgment, or similar agreement with a claimant shall give five days' written notice of such intent to all other parties and the court. . . . A determination by the court that the amount to be paid is reasonable must be secured. . . .

(2) A release, covenant not to sue, covenant not to enforce judgment, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount paid pursuant to the agreement unless the amount paid was unreasonable at the time of the agreement in which case the claim shall be reduced by an amount determined by the court to be reasonable.

(3) A determination that the amount paid for a release, covenant not to sue, covenant not to enforce judgment, or similar agreement was unreasonable shall not affect the validity of the agreement between the released and releasing persons nor shall any adjustment be made in the amount paid between the parties to the agreement.

Elovich's policy with Nationwide specifically excluded UIM coverage if the insureds settled without Nationwide's written consent. The settlement in cash and future payments amounted to approximately $1.7 million, plus substantial attorney's fees. The settlement did not exhaust the liability coverage of the entities settling. The plaintiffs also collected $100,000 from the Datsun owner's insurance company.

The plaintiffs then moved for a summary judgment requiring Nationwide to submit to arbitration to determine the amount of recovery, if any, under Elovich's policy. Nationwide responded with its own motion for summary judgment. It contended that arbitration was unnecessary because the plaintiffs had no UIM coverage and improper because it had not been notified of the settlement hearing and given an opportunity to participate. The court held for the plaintiffs and Nationwide appeals.

The first issue is whether UIM coverage extends to plaintiffs who have settled with some of the defendant–tortfeasors for less than the limits of their insurance coverage.

Nationwide argues that the defendant–tortfeasors were not "underinsured" under RCW 48.22.030. Nationwide reasons that the plaintiffs cannot recover under Elovich's UIM policy until they have exhausted all of the other insurance coverage.

We hold that recovery should be allowed pursuant to the statutory language and legislative history of RCW 48.22-.030. The statute provides in part:

(1) "*Underinsured motor vehicle*" means a motor vehicle with respect to the ownership, maintenance, or use of which either no bodily injury or property damage liability bond or insurance policy applies at the time of an accident, or with respect to which the sum of *the lim-*

*its of liability under all bodily injury or property dam-age liability bonds and insurance policies applicable to a covered person after an accident is less than the applicable damages which the covered person is legally entitled to recover.*

(Italics ours.)

Nationwide focuses on the second part of RCW 48.22-.030(1), which requires consideration of "the limits of liability under all . . . insurance policies applicable to a covered person . . ." The City, the State, and Nissan all possessed liability insurance in excess of the amounts contributed by their carriers to the settlement and therefore, they were not underinsured. Even if UIM coverage applies, Nationwide argues that the plaintiffs already have recovered more than the coverage limit and thus, no need exists for arbitration.

The plaintiffs argue that they are entitled to UIM coverage up to the policy limits or full compensation for their injuries. They contend that Nationwide must submit to arbitration to determine the amount the plaintiffs are "legally entitled to recover." RCW 48.22.030(1). They assert that the settlement figure is subtracted from that amount, and Nationwide must pay the difference, up to the policy limit.

These theories highlight an ambiguity in the statute: whether the UIM coverage is a "decreasing" layer of coverage that guarantees a minimum payment, or a "floating" layer of coverage that applies up to the total of the damages suffered. The distinction can be made through an illustration wherein "Driver X" carries $25,000 UIM coverage and while driving his own vehicle, he collides with "Driver Y", who carries $30,000 in liability coverage. In our illustration "Driver Y" is totally at fault but has no assets, X suffers $50,000 in injuries and settles with Y's insurer for $20,000.

### A. Decreasing Layer

Under this theory X can collect only $5,000 from his insurer. The $25,000 UIM coverage is minimum protection

for the insured. It decreases dollar–for–dollar by the amount Y's insurer pays, up to X's coverage limit. X recovered $20,000; his maximum recovery under his UIM coverage is $25,000. The focus of this theory, which Nationwide espouses, is minimum compensation.

## B. Floating Layer

Under this theory, X will collect $25,000 for UIM coverage. The UIM coverage will "float" on top of any recovery from other sources, up to the total value of X's injuries. The $20,000 collected from Y's insurer left X uncompensated in the sum of $30,000, the difference between the total of his damages *and* the amount collected from the tortfeasor's insurance. X's insurer, therefore, must pay the difference up to the policy limit. This theory provides the fullest protection for the insured.

 The legislative history is relevant to resolve the ambiguity as to which theory applies. *Bellevue Fire Fighters Local 1604 v. Bellevue,* 100 Wn.2d 748, 675 P.2d 592 (1984); *Washington State Nurses Ass'n v. Board of Med. Examiners,* 93 Wn.2d 117, 605 P.2d 1269 (1980). The Legislature amended the statute to include underinsured motorists in 1980. The current language of RCW 48.22-.030(1) came from Engrossed Substitute House Bill 1983, 46th Legislature (1980). An earlier version of the bill, Substitute House Bill 1983, contained different language, which provided, *inter alia,*

> the limits of liability under all . . . insurance policies applicable to a covered person after an accident is less than *the applicable limits of liability afforded by the insured's own policy.*[1]

---

[1]In jurisdictions with similar language, courts have held that the "decreasing layer" theory applies and allowed the insurer to set off amounts the insured has collected from the tortfeasor's insurer. *See, e.g., Yaden v. Hanover Ins. Co.,* 375 So. 2d 5 (Fla. Dist. Ct. App. 1979), *cert. denied,* 383 So. 2d 1205 (Fla. 1980); *Lick v. Dairyland Ins. Co.,* 258 N.W.2d 791 (Minn. 1977). *See generally* Annot., *Uninsured and Underinsured Motorist Coverage: Recoverability, Under Uninsured or Underinsured Motorist Coverage, of Deficiencies in Compensation Afforded Injured Party by Tortfeasor's Liability Coverage,* 24 A.L.R.4th 13 (1983).

(Italics ours.) AGO 13 (1981), at 10. Just before passage on the House floor, sponsors of the bill proposed amending the language to its present form:

the limits of liability under all . . . insurance policies applicable to a covered person after an accident is less than *the damages which the covered person is legally entitled to recover.*

(Italics ours.) House Journal, 46th Legislature (1980), at 260–61.

■ The amendment shifted the statute's focus from the liability limits of "the insured's own policy," to the limits of "damages which the covered person is legally entitled to recover." The new language shifts the emphasis from minimum recovery defined by policy limits to the total damages the party has suffered. This amendment indicates that the floating layer theory applies. Thus, the insureds should recover up to the amount of their damages but not more than the UIM policy limits. *See United Servs. Auto. Ass'n v. Winbeck*, 30 Wn. App. 769, 771, 637 P.2d 996 (1981) (insurance company forced to pay up to limit of UIM coverage, despite the $35,000 recovery from the tortfeasor's insurance company). The Attorney General reached a similar conclusion after analyzing the legislative history in AGO 13 (1981). Attorney General opinions, though not controlling, are entitled to great weight. *Kasper v. Edmonds*, 69 Wn.2d 799, 805, 420 P.2d 346 (1966).

The correctness of the "floating layer" result also is evident from an analysis of the law of other jurisdictions. Louisiana is the only jurisdiction with a UIM statute and legislative history similar to Washington's. AGO 13 (1981), at 12–16; Comment, *Washington's Underinsured Motorist Statute: Balancing the Interests of Insurers and Insureds*, 55 Wash. L. Rev. 819, 827 n.40 (1980). Louisiana initially enacted an uninsured motorist statute similar to Washington's 1967 version. *See* La. Rev. Stat. Ann. § 22:1406(D) (West 1978). In 1972 the Legislature amended the bill to provide UIM coverage, as Washington would do in 1980. 1972 La. Acts 137, § 1. At that time the Louisiana statute

retained language that mandated the "decreasing layer" theory of UIM protection. *Nicholson v. Casualty Reciprocal Exch.,* 332 So. 2d 906 (La. Ct. App. 1976) (insured carried $10,000 UIM coverage, and collected $5,000 from tortfeasor's insurance; thus, he could not recover more than $5,000 from his insurer despite having $15,000 in injuries. *Doucet v. Insurance Co. of N. Am.,* 302 So. 2d 731 (La. Ct. App. 1974).

In 1974, the Louisiana Legislature amended the relevant section to its present form, which is similar to Washington's post–1980 version.[2] In quoting the trial judge, the court concluded that the amendment adopted the "floating layer" theory in *Whitten v. Empire Fire & Marine Ins. Co.,* 353 So. 2d 1071, 1075 (La. Ct. App. 1977):

> *"The only logical conclusion to draw from the language of the 1974 amendment, redefining 'uninsured motor vehicle' as one on which the liability insurance coverage was less than the damages sustained by the innocent party, is that it was designed to remove the limits of recovery fixed by the 1972 legislation and permit full recovery of damages in appropriate cases.* This understanding is reflected in the terms of the endorsement added to plaintiff's contract of insurance by defendant after passage of the 1974 amendment. In substance, where the tortfeasor had liability coverage which was less than the damages suffered by the innocent party, the latter's [uninsured motorist] coverage because [sic] 'excess' after his settlement with the tortfeasor's liability carrier. However, if the defendant's stated position in this case is carried to its logical conclusion, i. e., that the UM carrier is entitled to credit for settlement proceeds received by plaintiff, the UM coverage never becomes 'excess'. In effect, therefore, the 1974 amendment becomes meaningless and the law reverts to the 1972 amendment under which the UM coverage became the limits of recovery.

---

[2]La. Rev. Stat. Ann. § 22:1406(D)(2)(b) (West 1978) provides, *inter alia:* "[T]he term uninsured motor vehicle shall . . . also be deemed to include an insured motor vehicle when the automobile liability insurance coverage on such vehicle *is less than the amount of damages suffered by an insured* . . ." (Italics ours.)

(Italics ours.) Thus, the insured could recover up to the UIM policy limits or the amount of his injuries.

The Louisiana Supreme Court also held for the insured when it decided whether an insured could collect under UIM coverage when he settled for less than the limit of the tortfeasor's liability insurance and less than the cost of his injuries. In *Niemann v. Travelers Ins. Co.*, 368 So. 2d 1003 (La. 1979), the insured suffered more than $10,000 in damages but settled with the tortfeasor's insurer for $9,750, less than the $10,000 tortfeasor's policy limit. The court allowed the insured to collect despite the fact that the tortfeasor still had insurance coverage available. The policy of full compensation and the legislative history were persuasive. Other courts have reached similar conclusions. *See, e.g., Tholen v. Carney*, 555 F.2d 479 (5th Cir. 1977) (Alabama law); *Rhault v. Tsagarakos*, 361 F. Supp. 202 (D. Vt. 1973) (Vermont law); *Harthcock v. State Farm Mut. Auto. Ins. Co.*, 248 So. 2d 456 (Miss. 1971); *Raitt v. National Grange Mut. Ins. Co.*, 111 N.H. 397, 285 A.2d 799 (1971). *See generally* Annot., *Right To Recover Under Uninsured or Underinsured Motorist Insurance for Injuries Attributable to Joint Tortfeasors, One of Whom Is Insured*, 24 A.L.R.4th 63, 76–83 (1983).

We reach the same conclusion. The Legislature made a significant language change during the 1980 amendment process. AGO 13 (1981). That change is presumed significant. *Bellevue Fire Fighters*, 100 Wn.2d at 751. We will not ignore the statute's focus on full compensation for the insured and thereby deny the effect of the amendment process.

The second issue is whether a plaintiff forfeits his right to collect under UIM coverage if he violates the "consent to settle" clause in the policy.

Elovich's policy with Nationwide denies UIM coverage when the insured "settles, without [Nationwide's] written consent, with anyone who may be liable for the injury." Nationwide never received notice of nor a request for its consent to settle. It argues, therefore, that the clause should

be enforced and the plaintiffs' claim of coverage dismissed.

A "consent to settle" clause was held invalid as contrary to public policy in *Hawaiian Ins. & Guar. Co. v. Mead,* 14 Wn. App. 43, 538 P.2d 865 (1975). Insurers' attempts to limit contractually the insured's right to recover when the tortfeasor lacks sufficient insurance have been set aside in a number of prior cases. *See Touchette v. Northwestern Mut. Ins. Co.,* 80 Wn.2d 327, 494 P.2d 479 (1972); *State Farm Mut. Auto. Ins. Co. v. Bafus,* 77 Wn.2d 720, 466 P.2d 159 (1970); *Solesski v. Oregon Auto. Ins. Co.,* 11 Wn. App. 850, 526 P.2d 68 (1974). Exclusionary clauses violate the statutorily enunciated public policy of protecting insureds from uncompensated injury.

We recognize that those cases arose prior to the 1980 amendments that expanded the statute to include underinsured motorists, but that does not diminish the policy which seeks full compensation for injured victims. Louisiana courts, after the amendments to their UIM statute, continued to recognize the overriding public importance of maximum compensation. *See, e.g., Bond v. Commercial Union Assur. Co.,* 407 So. 2d 401, 411 (La. 1981); *Boudreaux v. Government Employees Ins. Co.,* 454 So. 2d 135, 137 (La. Ct. App. 1984). Further, the legislative history of the 1980 amendments indicates that the primary concern of the Legislature was for those injured in auto accidents. *See* AGO 13 (1981), at 11. The consent to settle clause remains contrary to public policy and it is void.

Nationwide also claims that coverage is inapplicable because the plaintiffs interfered with Nationwide's right to contribution from the settling tortfeasors and their insurers. It argues that it had a right to contest the settlement at the reasonableness of settlement hearing required by RCW 4.22.060(1) and that the exclusion should preclude Nationwide's duty to cover the plaintiffs.

Neither the tort reform act nor cases construing it have extended protection to insurers. RCW 4.22.060(1) provides, in part:

A party prior to entering into a release, covenant not to sue, covenant not to enforce judgment, or similar agreement with a claimant shall give five days' written notice of such intent to all other parties and the court. The court may for good cause authorize a shorter notice period. The notice shall contain a copy of the proposed agreement. A hearing shall be held on the issue of the reasonableness of the amount to be paid with all parties afforded an opportunity to present evidence.

The statute requires only that parties be present at the reasonableness hearing. It states nothing about the parties' insurers or subrogees.

Moreover, insurers and subrogees of parties have no right to contribution pursuant to RCW 4.22.040. Contribution rights extend only to persons jointly and severally liable for the injury. RCW 4.22.040(1) provides, *inter alia*:

A right of contribution exists between or among two or more persons who are jointly and severally liable upon the same indivisible claim for the same injury, death or harm, whether or not judgment has been recovered against all or any of them. It may be enforced either in the original action or by a separate action brought for that purpose. The basis for contribution among liable persons is the comparative fault of each such person. However, the court may determine that two or more persons are to be treated as a single person for purposes of contribution.

Contribution rights extend only to joint tortfeasors. *See, e.g., Scott v. Cascade Structures*, 100 Wn.2d 537, 541, 673 P.2d 179 (1983); *Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 714, 658 P.2d 1230 (1983); *Glass v. Stahl Specialty Co.*, 97 Wn.2d 880, 883, 652 P.2d 948 (1982). The right of contribution and the accompanying right to be present at the reasonableness hearing do not encompass Nationwide.

Nationwide next argues that contribution rights are an adjunct to its subrogation rights. It asserts that it is subrogated to the interests of the remaining tortfeasor, Sweeny. Sweeny had a right to contribution from the other tortfeasors and to contest the reasonableness of the settlement. When the plaintiffs released the City, State and Nissan,

they eliminated Sweeny's right to contribution from those entities. Sweeny had no incentive to protect Nationwide's subrogation interest because he was judgment proof. Nationwide therefore argues that we should allow it to contest the reasonableness of the settlement as the only means of protecting its subrogation interest.

Nationwide's subrogation rights arise in equity and by contract. The equitable right of subrogation prevents the insured's double recovery from his insurer and the tortfeasor. It arises only after the insured has recovered fully for his injuries. *Thiringer v. American Motors Ins. Co.,* 91 Wn.2d 215, 220, 588 P.2d 191 (1978); *Mattson v. Stone,* 32 Wn. App. 630, 632–33, 648 P.2d 929 (1982). The contractual right is broader, but nothing in the Elovich policy allows Nationwide to protect its subrogation right at the statutory reasonableness hearing. Nothing in the statute suggests that the parties could create such a contractual right. See discussion, *supra. See also Capps v. Klebs,* 178 Ind. App. 293, 382 N.E.2d 947 (1978). Nationwide relies heavily on *State Farm Mut. Auto. Ins. Co. v. Lou,* 36 Wn. App. 838, 678 P.2d 339 (1984). The relevant facts in *Lou* are similar to the circumstances in this case. The injured party, Lou, was a passenger in a vehicle insured by State Farm. He settled with the tortfeasor's insurer for less than the policy limits, and granted a general release to the tortfeasor. The settlement failed to compensate Lou for all his injuries. State Farm then sued to recover payments it had made to Lou under its personal injury protection coverage. It claimed that it was entitled to reimbursement because Lou had destroyed its subrogation rights.

The opinion held that Lou had prejudiced State Farm's subrogation rights by granting a general release when the tortfeasor still possessed insurance coverage. *Lou,* at 841. The court refused to apply the rule that equitable subrogation arises only after the insured is fully compensated. Nationwide argues that the rule of *Lou* applies here because its rights were prejudiced.

*Lou* is distinguishable. First, it concerned personal

injury coverage, not UIM coverage. No statutory public policy factors militated in favor of coverage. Second, and more importantly, no evidence exists here that Nationwide has suffered prejudice from the settlement and release. To establish prejudice, Nationwide must show that it is entitled to recover from the entities released. It is entitled to recover only if the released entities' negligence exceeded the settlement figure as a percentage of the plaintiff's total injuries. *See Lou,* at 842. In other words, to establish prejudice Nationwide must show (1) the percentage of negligence of the City, State and Nissan; (2) the total losses the plaintiff suffered; (3) that the settlement as a percentage of the plaintiff's total injuries was less than the percentage of the settling entities' comparative negligence. Only if the latter percentage exceeds the former will Nationwide's subrogation rights have been prejudiced and *Lou* apply. Otherwise the rule from *Thiringer v. American Motors Ins. Co., supra,* applies: the insurance company's subrogation rights arise only after the plaintiffs have received full compensation for their injuries.

Nationwide cannot establish that its rights were prejudiced at the statutory reasonableness hearing. That is limited to parties. RCW 4.22.060. The proper forum for determining prejudice to Nationwide is the arbitration hearing. The trial court properly ordered Nationwide to submit to arbitration.

The order is affirmed.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, GOODLOE, and DURHAM, JJ., concur.