[No. 6825-1-III.  Division Three.  June 12, 1986.]

VELDA C. YARNELL, *Individually and as Personal Representative, Appellant,* v. FARMERS INSURANCE COMPANY OF WASHINGTON, *Respondent.*

*Jerry T. Dyreson* and *Taylor & Dyreson*, for appellant.

*Ronald D. Kappelman* and *Malott, Southwell & O'Rourke, P.S.*, for respondent.

THOMPSON, J.—Velda C. Yarnell appeals the summary judgment dismissal of her underinsured motorist claim. We reverse and remand.

On March 24, 1982, Sam Yarnell was fatally injured while riding as a passenger in his own automobile being driven by his son. At the time of the single–car accident, Mr. and Mrs. Yarnell were insured by Farmers Insurance Company under a policy which provided coverage of up to $50,000 each under liability and underinsured motorist (UIM) provisions. In July 1983, Farmers paid $50,000 pursuant to the liability provision, but denied the underinsured motorist claim, based on its policy definition of an underinsured motor vehicle.

Mrs. Yarnell individually and as personal representative of her husband's estate filed this action for declaratory judgment. The dispositive issue on appeal is whether the trial court erred in granting Farmers' motion for summary judgment, thus denying recovery under the underinsured motorist provisions of the insurance policy.

The Farmers policy defines an underinsured motor vehicle as one which is:

b. Insured by a bodily injury liability bond or policy at the time of the accident which provides coverage in amounts less than the limits of Underinsured Motorists Coverage shown in the Declarations.

This State's uninsured/underinsured motorist statute,

RCW 48.22.030, at the time of this accident provided:

(1) "Underinsured motor vehicle" means a motor vehicle with respect to the ownership, maintenance, or use of which either no bodily injury or property damage liability bond or insurance policy applies at the time of an accident, or with respect to which the sum of the limits of liability under all bodily injury or property damage liability bonds and insurance policies applicable to a covered person after an accident is *less than the applicable damages which the covered person is legally entitled to recover.*

(2) No new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury or death or property damage suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be issued with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles and hit–and–run motor vehicles because of bodily injury or death or property damage, resulting therefrom, except while operating or occupying a motorcycle or motor–driven cycle, and except while operating or occupying a motor vehicle owned or available for the regular use by the named insured or any family member, and which is not insured under the liability coverage of the policy: . . .

(Italics ours.) Laws of 1981, ch. 150, § 1, p. 717 (RCW 48.22.030).

■ An insurer is permitted to limit its UIM liability unless to do so would be inconsistent with public policy, which may be found in a regulatory statute. *Britton v. Safeco Ins. Co. of Am.,* 104 Wn.2d 518, 528–29, 707 P.2d 125 (1985); *Mutual of Enumclaw Ins. Co. v. Wiscomb,* 97 Wn.2d 203, 210, 643 P.2d 441 (1982). The strong public policy of protecting innocent victims of automobile accidents found in interpretations of the former (pre–1980) uninsured motorist statute has been carried over to RCW 48.22.030 and pervades our entire scheme of insurance leg-

islation. *Wiscomb,* at 208. *See Touchette v. Northwestern Mut. Ins. Co.,* 80 Wn.2d 327, 332, 494 P.2d 479 (1972).

The broad protection purposes of the underinsured motorist statute are balanced, however, by certain statutorily authorized exclusions. *See generally* Comment, *Washington's Underinsured Motorist Statute: Balancing the Interests of Insurers and Insureds,* 55 Wash. L. Rev. 819 (1980). An exclusion held to be nonviolative of public policy, as set forth in the statute, permits an insurer to exclude from coverage "an insured automobile", or "automobile to which the liability coverage of [the] policy applies". *Millers Cas. Ins. Co. v. Briggs,* 100 Wn.2d 1, 3, 7–9, 665 P.2d 891 (1983). However, no exclusion of this type was contained in the insurance contract at issue.

Nonetheless, Farmers maintains its definition is patterned after the exclusion expressly authorized by *Millers,* which denied host vehicle UIM coverage to an injured passenger based on the "insured automobile" exclusion noted above, and the rationale that:

> First, . . . the injured party has not paid a premium for coverage to this insurer. Thus, there is no danger the insurer will gain a windfall if it is not forced to pay under both provisions of the policy. Second, unlike uninsured motorist coverage, the honoring of this kind of exclusion in underinsured motorist coverage does not leave the injured party completely without compensation. He has already received some compensation pursuant to the liability coverage of the policy. Third, assuming the injured party has automobile insurance of his own, he should be able to collect additional amounts as a result of that policy's underinsured motorist coverage.

*Millers,* at 7 (quoting Comment, 55 Wash. L. Rev. at 827). In addition to other factual differences, *Millers* is distinguishable, since no "insured automobile" exclusion was included in the Farmers policy; the injured passenger here, Mr. Yarnell, was the person who had paid the premium, *see United Servs. Auto. Ass'n v. Winbeck,* 30 Wn. App. 769, 771, 637 P.2d 996 (1981); and under the third *Millers*

rationale, Mr. Yarnell as the "injured party" should be entitled to collect under his own UIM coverage.

■ The policy's definition of "underinsured motor vehicle", consistent with a "decreasing layer" theory of UIM coverage was, in fact, rejected by the 1980 Legislature.[1] The present statute embodies the "floating layer" theory of UIM coverage, and shifts the focus from the liability limits of the insured's policy to the limits of "damages which the covered person is legally entitled to recover". *Elovich v. Nationwide Ins. Co.*, 104 Wn.2d 543, 550, 707 P.2d 1319 (1985). Thus, insureds may recover up to the amount of their damages, but not more than UIM policy limits. *Elovich*, at 550. This result is also consistent with the interpretation of a similar Louisiana statute and developing case law. *Elovich*, at 551 (citing *Whitten v. Empire Fire & Marine Ins. Co.*, 353 So. 2d 1071, 1075 (La. Ct. App. 1977)).

Allowing Farmers' contractual modification of the statute would contravene public policy disallowing reduction of underinsured motorist benefits below statutory limits

---

[1]*Compare*
(1) language in the policy:
3. Underinsured motor vehicle means a motor vehicle which is:
  . . .
    b. Insured by a bodily injury liability bond or policy at the time of the accident which provides coverage in amounts less than the limits of Underinsured Motorists Coverage shown in the Declarations.
*See also* N.M. Stat. Ann. § 66-5-301 (1984), a typical "decreasing layer" statute which contains language consistent with the Farmers provision, *and*
(2) an earlier proposed but rejected version of RCW 48.22.030(1) (Substitute House Bill 1983, 46th Legislature (1980)) containing the following language:
    the limits of liability under all . . . insurance policies applicable to a covered person after an accident is less than *the applicable limits of liability afforded by the insured's own policy*.
(Footnote omitted.) *Elovich v. Nationwide Ins. Co.*, 104 Wn.2d 543, 549, 707 P.2d 1319 (1985) (quoting AGO 13 (1981), at 10), *with*
(3) RCW 48.22.030(1):
    the limits of liability under all . . . insurance policies applicable to a covered person after an accident is less than *the applicable damages which the covered person is legally entitled to recover*.
(Italics ours.) *See* House Journal, 46th Legislature (1980), at 260–61. Amended by Laws of 1981, ch. 150, § 1, p. 717. The change in language is deemed significant. *Elovich*, at 550, 552.

unless authorized by statute. *Britton,* at 526–27. The trial court's approval as a matter of law of Farmers' attempt to implement by contract that which the Legislature expressly rejected was erroneous, therefore we reverse and grant summary judgment to Mrs. Yarnell, remanding for trial on damages.

McINTURFF, A.C.J., concurs.

MUNSON, J. (dissenting)—Tony Yarnell, an emancipated son, was driving his father Sam to Colville when he negligently left the roadway striking a tree causing both their deaths. Farmers, the insurer of the vehicle, paid $50,000 to Sam's surviving wife and estate pursuant to the liability provisions of the insurance policy. They declined to pay a similar amount under the underinsured motorist provisions of their policy, although it is conceded for the purpose of this action that Sam's damages exceeded $100,000.

The denial was based upon Farmers' policy definition of underinsured motor vehicle, which is:

3. . . .
   . . .
   b. Insured by a bodily injury liability bond or policy at the time of the accident which provides coverage in amounts less than the limits of Underinsured Motorists Coverage shown in the Declarations.

This definition conflicts with the statutory provision of RCW 48.22.030, which defines an underinsured motor vehicle as:

(1) . . . a motor vehicle . . . with respect to which the sum of the limits of liability under all bodily injury or property damage liability bonds and insurance policies applicable to a covered person after an accident is *less that the applicable damages which the covered person is legally entitled to recover.*

(Italics mine.)

The inconsistency is apparent; Farmers' definition is void. *Elovich v. Nationwide Ins. Co.,* 104 Wn.2d 543, 550, 707 P.2d 1319 (1985). For the purposes of this case, the

policy does not define an underinsured motorist. *See Brummett v. Grange Ins. Ass'n,* 4 Wn. App. 979, 981, 485 P.2d 88 (1971).

The majority attempts to distinguish *Millers Cas. Ins. Co. v. Briggs,* 100 Wn.2d 1, 665 P.2d 891 (1983), but is only partially successful. In *Millers,* a permissive driver was involved in a single–car accident in which one passenger was killed and another seriously injured. Neither passenger was related to the driver. The court there noted three differences between underinsured motorist statutes and uninsured motorist statutes and the claims arising thereunder.

> First, . . . the injured party has not paid a premium for coverage to this insurer. Thus, there is no danger the insurer will gain a windfall if it is not forced to pay under both provisions of the policy. Second, unlike uninsured motorist coverage, the honoring of this kind of exclusion in underinsured motorist coverage does not leave the injured party completely without compensation. He has already received some compensation pursuant to the liability coverage of the policy. Third, assuming the injured party has automobile insurance of his own, he should be able to collect additional amounts as a result of that policy's underinsured motorist coverage.
>
> Comment, *Washington's Underinsured Motorist Statute: Balancing the Interests of Insurers and Insureds,* 55 Wash. L. Rev. 819, 827 (1980).

*Millers,* at 7.

Here, the injured party did pay a premium to this insurer. Second, Farmers' policy did not have the same provision excluding the insured automobile from underinsured coverage. Third, the "injured party" is seeking collection from its own insurer. Thus, most of the reasons set forth in *Millers,* which support the exclusion of the insured vehicle from the operation of underinsured motorist provisions, are not applicable here.

Notwithstanding, the reasoning in *Millers,* at 8, supplies the first basis for my departure from the majority's conclusion:

The owner of a vehicle purchases liability insurance to, among other things, protect passengers in the vehicle from his, or another driver's, negligent driving. He purchases underinsured motorist coverage to protect himself and others from damages caused *by another vehicle* which is underinsured. An insured wishing to avoid personal liability, and protect his passengers, may simply increase the liability insurance. The result of dual recovery in the instant case would transform underinsured motorist coverage into liability insurance. This result would cause insurance companies to charge substantially more for underinsured motorist coverage in order to match the cost of that coverage with the presently more expensive liability coverage. This increase in cost would discourage consumers from purchasing underinsured coverage, an important protection presently available for a minimal cost.

(Italics mine.)

Here, Tony, a permissive driver of the insured's vehicle, was an "insured." He was underinsured only because his father had decided not to increase the limits of his liability coverage. That decision was Sam's; his underinsured motorist insurance should not be converted into liability insurance simply because he chose to purchase too little liability coverage.

Second, I do not believe the intent of the Legislature was to extend underinsured motorist coverage to cover the owner of the vehicle, injured in that vehicle, in a single–car accident. Although Farmers could have inserted such an exclusion, it was not required to do so because the statute itself does not mandate underinsured coverage to an insured, injured in his own vehicle, in a single–car accident. The statute, as recognized in *Millers,* at 6, 8, contemplates *two* distinct vehicles, *i.e.,* the underinsured's motor vehicle and the motor vehicle to which underinsured motorist coverage is extended.

Finally, I do not believe that denying dual recovery violates the strong policy of allowing full recovery mandated by *Elovich; Elovich* and *Millers* are reconcilable. *Elovich,* at 552, prohibits the insurer from limiting coverage to the

amount recovered under one policy where other policies also are applicable, and recovery under only one policy would not totally compensate the insured. On the other hand, *Millers* stands for the proposition that the public policy of full compensation for injuries does not require dual recovery where only one of two or more policies covers the accident or occurrence. Here, like the situation in *Millers,* only the liability provision covered this kind of accident. Thus, I would affirm.