[No. 54534–1. En Banc. August 2, 1990.]

BRET BLACKBURN, ET AL, *Petitioners,* v. SAFECO INSURANCE COMPANY, *Respondent.*

*Sam Pemberton,* for petitioners.

*Burgess, Kennedy, Fitzer & Strombom, P.S.,* by *F. Ross Burgess* and *Timothy R. Gosselin,* for respondent.

*Bryan P. Harnetiaux, Gary N. Bloom,* and *Robert H. Whaley* on behalf of Washington Trial Lawyers Association, amici curiae for petitioners.

*Bertha B. Fitzer* on behalf of Washington Defense Trial Lawyers, amicus curiae for respondent.

CALLOW, C.J.—Petitioners Bret and Penny Blackburn seek review of a decision of the Court of Appeals that reversed a trial court judgment in their favor. The issue is whether an exclusion in the underinsured motorist (UIM) policy is valid, under Washington's UIM statute, in a 1–car accident when the claimant, a passenger, does not achieve full recovery under the vehicle driver's liability policy and did not recover under the vehicle owner's liability policy.

We reexamine *Millers Cas. Ins. Co. v. Briggs,* 100 Wn.2d 1, 665 P.2d 891 (1983), and hold that, as in *Millers,* the

UIM insurance policy provision excluding covered autos under the policy's liability coverage from the definition of an underinsured motor vehicle is valid. Hence, the policy exclusion, as applied to "other insureds," is valid under the specific facts of this case.

I

On January 11, 1985, petitioner Bret Blackburn (Blackburn) was seriously injured while riding as a passenger in a car owned by Evergreen Chrysler Plymouth, Inc. (Evergreen). Evergreen insured the car with respondent Safeco Insurance Company of America (Safeco). The car's driver, Don Lougee (Lougee), had the permission of Evergreen to drive the car. He failed to negotiate a curve and the car struck a power pole. Lougee was at fault.

Blackburn collected $25,000 from Lougee's liability policy. The costs of Blackburn's injuries exceeded Lougee's liability policy. Lougee was not covered under Evergreen's Safeco policy because of a policy exclusion. The record does not reflect that Blackburn had his own UIM insurance policy.

In a separate suit, Blackburn brought an action to recover additional benefits directly against Evergreen and Lougee. The Superior Court dismissed Blackburn's claims, determining that Evergreen was not liable to Blackburn because Lougee was not acting as Evergreen's agent at the time of the accident. The Court of Appeals affirmed. *Blackburn v. Evergreen Chrysler Plymouth*, 53 Wn. App. 146, 765 P.2d 922, *review denied*, 112 Wn.2d 1015 (1989).

Before the agency issue was resolved, Blackburn also made a claim to Safeco for UIM benefits under Evergreen's Safeco policy. This policy described who is insured for underinsured motorist coverage as:

1. You or any family member.
2. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.

3. Anyone for damages he is entitled to recover because of bodily injury sustained by another insured.

Although Blackburn was occupying a covered auto that appeared to be underinsured according to the policy, Safeco denied UIM coverage to Blackburn. The UIM coverage was denied because the policy excluded from the definition of underinsured motor vehicle:

Any vehicle [w]hich is a covered auto for LIABILITY INSURANCE.

Blackburn sought a declaratory judgment to settle his rights under the Safeco policy. The Superior Court entered judgment for Blackburn on the grounds that Safeco's exclusion violated public policy.[1] The Court of Appeals reversed. *Blackburn v. Safeco Ins. Co.*, 49 Wn. App. 423, 744 P.2d 347 (1987). This appeal follows. Blackburn argues that *Millers* only prohibits double recovery, which he has not received. Safeco argues that as in *Millers,* the UIM policy exclusion does not violate the UIM statute or public policy.

## II

■ An insurance regulatory statute becomes part of the insurance policy. *Britton v. Safeco Ins. Co. of Am.,* 104 Wn.2d 518, 526, 707 P.2d 125 (1985) (citing *Touchette v.*

---

[1]In June 1986, the Pierce County Superior Court granted summary judgment for Safeco, ruling that the Safeco policy did not afford UIM coverage to Blackburn. Citing *Millers Cas. Ins. Co. v. Briggs,* 100 Wn.2d 1, 665 P.2d 891 (1983), the court rejected Blackburn's argument that the exclusion upon which Safeco justified its denial of benefits was invalid as against public policy.

While Blackburn's appeal of this ruling was pending, a judgment was rendered in the Thurston County Superior Court dismissing Blackburn's claims against Evergreen on the ground that Lougee was not Evergreen's agent at the time of the accident. In light of this ruling, Blackburn brought a motion for relief from the Pierce County judgment. Blackburn argued that since liability coverage was not provided, the *Millers* case's approval of exclusions that prevent dual recovery of UIM and liability insurance benefits under the same policy is inapplicable. Blackburn moved that the trial court's decision be vacated. The Superior Court granted Blackburn's motion in June 1987, ordered the previous judgment for Safeco vacated, and entered a new judgment declaring UIM coverage available to Blackburn. Safeco appealed and the Court of Appeals reversed. *Blackburn v. Safeco Ins. Co.,* 49 Wn. App. 423, 744 P.2d 347 (1987).

*Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 332, 494 P.2d 479 (1972)). To be entitled to UIM benefits, the terms and conditions of the insured's contract with the UIM carrier must be consistent with the statute and cases construing it. Washington's underinsured motorist statute mandates that

> No new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury, death, or property damage, suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be issued . . . unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles . . ..

RCW 48.22.030(2).

The petitioner argues that Safeco's UIM policy provision that excludes vehicles covered under the liability insurance policy from the definition of underinsured motor vehicle violates the mandates of the UIM statute. That statute defines an underinsured motor vehicle as

> a motor vehicle with respect to the ownership, maintenance, or use of which either no bodily injury or property damage liability bond or insurance policy applies at the time of an accident, or with respect to which the sum of the limits of liability under all bodily injury or property damage liability bonds and insurance policies applicable to a covered person after an accident is less than the applicable damages which the covered person is legally entitled to recover.

RCW 48.22.030(1).[2]

■ As noted, this definition of an underinsured motor vehicle becomes part of the Safeco insurance policy. To decide whether Safeco's UIM policy exclusion violates the statute, the extent of the coverage mandated by the Legislature must be determined by analyzing the intent and purpose of the statute, the rulings of this court, and the contract between the insurance company and the party asserting coverage.

---

[2]An underinsured motor vehicle is also "deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency." RCW 48.22.040(1).

■ The legislative intent and the extent of coverage mandated by the UIM statute have been difficult to determine.[3] The UIM statute does not specify the extent of the coverage mandated.[4] Moreover, the statute does not define the legislative intent or purpose behind the UIM statute. We have construed the purpose of the statute

> as allowing an injured party to recover those damages which the injured party would have received had the responsible party been insured with liability limits as broad as the injured party's statutorily mandated underinsured motorist coverage limits.

*Hamilton v. Farmers Ins. Co.*, 107 Wn.2d 721, 727, 733 P.2d 213 (1987) (quoting *Britton*, 104 Wn.2d at 531). The strong public policy of protecting the innocent victim of an auto accident from the uninsured motorist is carried over to the underinsured motorist. *See Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 208, 643 P.2d 441 (1982) (citing *Touchette v. Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 332, 494 P.2d 479 (1972)).

In protecting the innocent victim of an auto accident, UIM insurance provides a source of indemnification when the tortfeasor does not provide adequate protection. We have stated that the legislative purpose behind the UIM statute is to ensure the availability of this added source of recovery. *See Elovich v. Nationwide Ins. Co.*, 104 Wn.2d 543, 549, 707 P.2d 1319 (1985). Washington's UIM coverage has been described as a layer of excess coverage that "floats" on the top of recovery from other sources. *Elovich*, 104 Wn.2d at 549. Thus, UIM coverage is a second layer of coverage for the injured party. Because parties contract

---

[3]One commentator noted that even after multiple amendments, "the statute remains a patchwork of provisions that create ambiguity and confusion." Dellwo & Conniff, *The Washington Underinsured Motor Vehicle Insurance Statute: Reading the Legislature's Mind*, 23 Gonz. L. Rev. 235, 235 (1987–1988).

[4]RCW 48.22.030(2) does specifically exclude injuries that result from "operating or occupying a motorcycle or motor-driven cycle, and except while operating or occupying a motor vehicle owned or available for the regular use by the named insured or any family member, and which is not insured under the liability coverage of the policy."

with UIM insurers to provide an additional layer of compensation, the contractual relationship between the insurer and the insured must be considered. Although the public is served by maximizing the extent of the protection afforded by the coverage, the insurance company is not required to provide the coverage for free. In providing this coverage, insurance companies should charge and the insured should pay an appropriate premium. *See* 2 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 35.2, at 47 (2d ed. 1987).

In establishing specific insurance coverage, parties enter into a contract with an insurance company. The specific contract terms of the policy must be read along with the statute to see if the terms are void and unenforceable. We have invalidated insurance policy provisions that deny UIM coverage to the extent mandated by the UIM statute.[5] In *Millers Cas. Ins. Co. v. Briggs,* 100 Wn.2d 1, 665 P.2d 891 (1983), we held that a policy exclusion, similar to the one at issue in the instant case, neither violated the UIM statute nor public policy. In *Millers,* as in the instant case, the exclusion at issue was applied to "other insureds." The distinction between "named insureds and family members" and "other insured" is critical in our analysis.

In insurance contracts, UIM endorsements prescribe who is entitled to seek indemnification by specifically defining the term "insured" or "covered person." *See* Widiss § 33.1, at 19. In many UIM policies, "covered persons" are divided into three classes:

1. You or any family members (named insured);
2. Any other person while occupying your covered vehicle (other insured); and
3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage

---

[5] "[W]here the [UIM] endorsement does not provide protection to the extent mandated by the [UIM] statute, the offending portion of the policy is void and unenforceable." *Britton,* 104 Wn.2d at 531 (invalidating disability setoff); *see also Elovich,* 104 Wn.2d at 552–53 (invalidating "consent to settle" clause).

applies sustained by a person described in 1 or 2 above.[6]

The underinsured motorist policy affords those "named insureds" under class 1 with *first party* coverage that applies at all times, whatever may be the insured's activity at the time of the accident. *See Kowal v. Grange Ins. Ass'n,* 110 Wn.2d 239, 245, 751 P.2d 306 (1988). Persons covered under class 2, occupying a covered vehicle ("other insureds"), however, are covered only while occupying a covered motor vehicle. "Other insureds" have the option of contracting with an insurance company for their own UIM coverage under a policy which provides them with UIM coverage that applies at all times as a "named insured." Thus, insureds have the option to contract with an insurance company and pay a premium for UIM insurance that applies at all times, regardless of their status in a particular vehicle.

The record does not reflect that Blackburn contracted with his insurance company to become a "named insured" under his own UIM policy. In any case, the focus here is on Blackburn as an "other insured" under the Safeco policy because he was occupying a covered vehicle. Similarly, the injured passenger in *Millers* was also an "other insured" because he was occupying a covered vehicle.

In *Millers* an intoxicated driver caused a single–car accident which killed one passenger and injured another. *Millers,* 100 Wn.2d at 2. After the insurer paid the limits of the driver's liability coverage, the claimants sued to recover under the driver's UIM coverage. *Millers,* 100 Wn.2d at 3. This policy provided UIM coverage to "other insureds" while occupying the covered auto; however, the UIM policy excluded vehicles covered under liability provisions from the definition of underinsured motor vehicle. *Millers* held

---

[6]This definition of "covered persons" is widely used by the insurance industry. See INSURANCE SERVICES OFFICE PERSONAL AUTO POLICY PORTFO-LIO: Underinsured Motorist Coverage Form PP 03 11 (ed. 6–80), *reprinted in* 2 A. Widiss, *Uninsured and Underinsured Motorist Insurance* app. H (2d ed. 1987).

that an insurance policy provision which excluded the insured vehicle from the definition of a UIM vehicle did not violate public policy or the UIM statute under the specific facts of the case. *Millers,* 100 Wn.2d at 8.

*Millers* articulated several reasons that justified upholding the provision in the policy which excluded "other insured" claimants from UIM coverage. As to the first reason, *Millers* implied that RCW 48.22.030(2)'s language manifested a legislative intent that the statute contemplated two distinct motor vehicles. In reaching this conclusion, we relied on *Breaux v. Government Employees Ins. Co.,* 369 So. 2d 1335 (La. 1979) which interpreted a statute substantially similar to our statute. *Millers,* 100 Wn.2d at 5–6. As noted by *Millers,* the Louisiana court reasoned that

> [a]s to coverage under the uninsured motorist provisions of a particular policy, *the statute thus contemplates two distinct motor vehicles: the motor vehicle with respect to which uninsured motorist coverage is issued and the "uninsured or underinsured" motor vehicle.* In addition, as to each policy containing uninsured motorist coverage, *the statute distinguishes between the person insured under the policy in question and the owner or operator of the uninsured or underinsured motor vehicle.*

*Millers,* 100 Wn.2d at 6 (quoting *Breaux,* 369 So. 2d at 1338).

Although we adopted the Louisiana court's reasoning, this interpretation has been criticized as too expansive a reading of the Louisiana statute.[7] Regardless of Louisiana's interpretation of its statute and our own cases that follow that interpretation, a 2–car requirement applies in Blackburn's case because *the insurance policy* requires two cars. (The policy excludes the vehicle which is covered for liability from the definition of an underinsured motor vehicle.)

---

[7]*See* dissent in *Nall v. State Farm Mut. Auto. Ins. Co.,* 406 So. 2d 216, 220 (La. 1981) (Dixon, C.J., dissenting) (noting the Louisiana statute "clearly contemplates underinsured motorist coverage for an insured who is a passenger in an underinsured vehicle, and is injured by the negligence of the host driver"). *But see* McKenzie, *Insurance,* 40 La. L. Rev. 676, 677 (1980) (*Breaux* decision is consistent with the express provisions of the insurance policy and based upon a reasonable interpretation of the statute).

As *Millers* goes on to point out, relevant policy and commonsense reasons validate why *an insurance provision that requires two cars* is appropriate under the UIM statute when applied to "other insureds."

In allowing the policy exclusion, *Millers* reasoned that public policy did not require dual compensation because of the distinctions between underinsured and uninsured motorist coverage. *Millers* noted the following distinctions between the uninsured and underinsured statutes:

> First, . . . the injured party has not paid a premium for coverage to this insurer. Thus, there is no danger the insurer will gain a windfall if it is not forced to pay under both provisions of the policy. Second, unlike uninsured motorist coverage, the honoring of this kind of exclusion in underinsured motorist coverage does not leave the injured party completely without compensation. He has already received some compensation pursuant to the liability coverage of the policy. Third, assuming the injured party has automobile insurance of his own, he should be able to collect additional amounts as a result of that policy's underinsured motorist coverage.

*Millers,* at 7 (quoting Comment, *Washington's Underinsured Motorist Statute: Balancing the Interests of Insurers and Insured,* 55 Wash. L. Rev. 819, 827 (1980)).

All of the policy rationales that the *Millers* court articulated to support that conclusion apply equally to Blackburn. Blackburn did not pay Evergreen's insurer a premium to obtain UIM coverage. Compare *Millers,* 100 Wn.2d at 7. Blackburn has already recovered under the liability portion of the tortfeasor's insurance policy. Compare *Millers,* 100 Wn.2d at 7. The record does not reflect that Blackburn recovered under his own UIM policy. Regardless, he had the opportunity to purchase his own UIM coverage. Compare *Millers,* 100 Wn.2d at 7–8. As the petitioner notes, dual compensation under the same policy is not at issue in Blackburn's case because he cannot recover under Safeco's liability policy since Lougee was not covered by Safeco's policy. Nonetheless, public policy does not dictate a different result than *Millers.* No public policy requires an insurer to provide an insured with a third source of recovery, particularly when the insured has seen

fit not to carry additional UIM coverage of his own. *See Blackburn*, 49 Wn. App. at 426. Likewise, the UIM statute does not require Evergreen's Safeco policy to provide Blackburn with UIM coverage under the facts of this case. Accordingly, the insurer can, by unambiguous language, exclude such recovery. *See Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 528–29, 707 P.2d 125 (1985).

The third rationale for the decision in *Millers* was dictated by a commonsense approach and the consuming public's general understanding of coverage under these circumstances. *Millers*, 100 Wn.2d at 8. As noted in *Millers*, 100 Wn.2d at 8:

> The owner of a vehicle purchases liability insurance to, among other things, protect passengers in the vehicle from his, or another driver's, negligent driving. He purchases underinsured motorist coverage to protect himself and others from damages caused by another vehicle which is underinsured. An insured wishing to avoid personal liability, and protect his passengers, may simply increase the liability insurance. The result of dual recovery in the instant case would transform underinsured motorist coverage into liability insurance.

Blackburn seeks results that would allow him to be compensated just as if Evergreen had purchased liability insurance from Safeco that covered Lougee. Safeco, assuming the UIM policy exclusion is similar to *Millers*, should not be required to provide UIM coverage to an "other insured" to whom Safeco had denied liability insurance. In effect, such a requirement would transform the UIM insurance into the denied liability insurance. Common sense and the consuming public's general understanding of coverage do not dictate a contrary result.

The holding in *Millers* that allowed the UIM exclusion, as applied to "other insureds," is reaffirmed. Likewise, the UIM exclusion in Blackburn's case is fully consistent with the UIM statute and the public policy underlying the statute. A 2–car requirement applies in *Millers* and in this case because the insurance policy exclusion requires two cars.

Recent Washington cases do not compel a contrary result. In *Sears v. Grange Ins. Ass'n*, 111 Wn.2d 636, 637,

762 P.2d 1141 (1988), a negligent driver collided with another vehicle, injuring a passenger in the second vehicle. As in Blackburn, the passenger recovered against the tortfeasor's liability insurance. The passenger also recovered against her own UIM insurance policy. *Sears,* 111 Wn.2d at 637. As in Blackburn, she then sought to recover under her host's UIM coverage. *Sears,* 111 Wn.2d at 637. The policy in *Sears,* however, defined persons covered by the UIM policy as "anyone using your covered auto with your permission." (Italics omitted.) *Sears,* 111 Wn.2d at 638. The insurer denied coverage solely on the ground that the passenger was not "using" the host's vehicle within the meaning of the policy. *Sears,* 111 Wn.2d at 637. Applying the ordinary meaning of the word "use," we held that the policy covered the passenger. *Sears,* 111 Wn.2d at 638–39. *Sears* stands for the proposition that the UIM statute permits an insurer to offer UIM coverage to "other insured" passengers. Blackburn's case and *Millers* stand for the proposition that the UIM statute permits an insurer to exclude UIM coverage under specific circumstances that comport with the UIM statute and public policy.

Similarly, *Mutual of Enumclaw Ins. Co. v. Wiscomb,* 97 Wn.2d 203, 643 P.2d 441 (1982) does not affect our holding. *Wiscomb* held that a family or household exclusionary clause in a liability insurance policy conflicted with public policy and was void. *Wiscomb,* 97 Wn.2d at 213. In *Wiscomb,* we were concerned about the individual's level of bargaining power in contracting with the insurer. Moreover, the exclusionary clause in *Wiscomb* dealt with a "family or household exclusion." This exclusion is similar to the category of "named insured or family member", *not* "other insureds." Blackburn, however, fits under the category of "other insureds." More importantly, Blackburn did not contract with Safeco for UIM insurance. Blackburn was able to purchase the protection he seeks from his own insurance company. The exclusionary provision of the Safeco policy, as applied to "other insureds," is consistent with the Washington UIM statute, the public policy of this

State, and the expectations of the parties to the insurance contract.

The Court of Appeals is affirmed.

UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, and DURHAM, JJ., and PEARSON, J. Pro Tem., concur.

DORE, J. (dissenting)—I dissent. I would hold that liability coverage exclusions in underinsured motorist (UIM) policies are invalid as against public policy because they limit insurance coverage on a basis other than the risk of the insurer, and therefore contravene this State's long–standing policy of full compensation for accident victims. In light of that finding, I would overrule *Millers Cas. Ins. Co. v. Briggs*, 100 Wn.2d 1, 665 P.2d 891 (1983).

Initially, I think it is important to note that Blackburn filed an action in Thurston County Superior Court seeking to hold Evergreen liable in order to recover against the liability portion of the Safeco policy. Blackburn argued that at the time of the accident Lougee was the agent of Evergreen and, therefore, covered by Evergreen's Safeco policy. A trial was held in which, pursuant to stipulation, the issues were limited to Lougee's relationship to Evergreen. The Thurston County Superior Court determined that Lougee was not the agent of Evergreen, and that Evergreen therefore could not be liable to Blackburn. The Court of Appeals affirmed. *Blackburn v. Evergreen Chrysler Plymouth*, 53 Wn. App. 146, 765 P.2d 922, *review denied*, 112 Wn.2d 1015 (1989). That decision precluded Blackburn from recovering against the liability portion of Evergreen's Safeco policy. The majority would now prevent Blackburn from recovering UIM benefits under the Safeco policy.

Blackburn is purportedly barred from UIM coverage by a liability coverage exclusion: a policy provision which stipulates that UIM coverage is not available where the underinsured vehicle is the same vehicle which is insured for

liability purposes.[8] This court has previously held that liability coverage exclusions are valid. *Millers Cas. Ins. Co. v. Briggs,* 100 Wn.2d 1, 665 P.2d 891 (1983). For the following reasons I would now overrule *Millers.*

The court in *Millers* determined that the Legislature had implicitly authorized the liability coverage exclusion in the text of RCW 48.22.030(2). That statute provides in part:

> No new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury, death, or property damage, . . . shall be issued with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles . . ..

The *Millers* court did not engage in any independent, detailed analysis of this statute. Instead, it relied on a Louisiana case interpreting that state's similar UIM statute. The Louisiana court reasoned:

> In our view, the intent and effect of this provision is plain. A person insured under the uninsured motorist provision of a particular policy delivered or issued for delivery in this state with respect to a motor vehicle registered or principally garaged in this state must establish that he is legally entitled to recover damages *from* the owners or operators of uninsured or underinsured motor vehicles in order to obtain coverage thereunder. As to coverage under the uninsured motorist provisions of a particular policy, the statute thus contemplates two distinct motor vehicles: the motor vehicle with respect to which uninsured motorist coverage is issued and the "uninsured or underinsured" motor vehicle. In addition, as to each policy containing uninsured motorist coverage, the statute distinguishes between the person insured under the policy in

---

[8]Blackburn did not and could not receive the proceeds of the liability policy. Much of the controversy in this case has revolved around the proper application of *Millers* in such circumstances. Blackburn argues that *Millers* prohibits only double recovery, which he has not received. Safeco argues that Blackburn "triggered" liability coverage by causing Safeco to defend Evergreen and that, in any case, *Millers* authorizes the liability coverage exclusion regardless of whether the UIM claimant recovers or "triggers" liability coverage. Because I would hold that the liability coverage exclusion violates public policy in all circumstances and overrule *Millers,* I do not need to consider these arguments.

question and the owner or operator of the uninsured or under-insured motor vehicle.

*Breaux v. Government Employees Ins. Co.,* 369 So. 2d 1335, 1338 (La. 1979).

In other words, from the fact that RCW 48.22.030(2) refers separately to "motor vehicle" and "underinsured motor vehicles", the *Millers* court inferred that an insured who recovers against the liability portion of one policy can be barred from recovering UIM benefits unless he bases that claim on some other UIM policy, presumably covering some other vehicle. This has come to be known as the "2-car rule."

I would now reject this interpretation of the UIM statute. First, the *Millers* court erred in adopting the reasoning of the Louisiana court without conducting an independent analysis of our own statute. While the Louisiana UIM statute is substantially similar to ours, there is one important difference. The Louisiana statute provides:

D. The following provisions shall govern the issuance of uninsured motorist coverage in this state.

(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state . . . unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of *uninsured* or *underinsured* motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom . . ..

(Italics mine.) La. Rev. Stat. Ann. § 22:1406(D)(1)(a)(i) (West Supp. 1990). The difference is that, where our statute refers only to "underinsured motor vehicles," the Louisiana statute refers to both *uninsured* and underinsured motor vehicles. This difference means that the Louisiana statute will support an interpretation which our UIM statute will not. Since the "motor vehicle" referred to in the first part of the Louisiana statute is obviously insured, the

uninsured or underinsured motor vehicle referred to subsequently must be a different vehicle. The same vehicle could not be both insured and uninsured. In this light, the Louisiana court was justified in concluding that its statute unambiguously "contemplates two distinct motor vehicles".

That reasoning, however, does not apply to our own statute. The first part of our statute refers to a "motor vehicle" covered by a liability policy and subsequently refers only to "underinsured motor vehicles".[9] Since a single vehicle *can be* both insured for liability purposes and underinsured for UIM purposes, there is no reason to conclude from the words of the statute alone that the Legislature contemplated two distinct policies on two distinct cars. The *Breaux* analysis is inapplicable to RCW 48.22.030(2).

Second, the analysis of *Breaux* is inadequate on its own terms. RCW 48.22.030(2) defines the vehicles for which underinsured motorist coverage must be provided. In choosing the words of this subsection, the Legislature obviously did not consider the intricate questions presented by *Millers* and the present case. To decide, on the basis of the wording of the statute alone, that liability coverage exclusions are consistent with the Legislature's intent simply stretches general terms past their breaking point.

For example, the statute does indeed refer separately to "motor vehicle" and "underinsured motor vehicles", but it also refers separately to "persons" and "owners or operators". We could infer a "2–person rule" from the wording of the statute just as plausibly as a "2–car rule"—even more so, given that the statute is aimed at protecting persons, not vehicles. *See Finney v. Farmers Ins. Co.,* 92 Wn.2d 748, 752, 600 P.2d 1272 (1979), *modified in Glover v. Tacoma Gen. Hosp.,* 98 Wn.2d 708, 724 n.4, 658 P.2d 1230 (1983). Such a "2–person rule" would provide UIM coverage to

---

[9]I recognize that RCW 48.22.030(1) defines "'[U]nderinsured motor vehicles'" to include uninsured vehicles as well. This does not change the fact that a "2–car rule" cannot be inferred from the *wording* of RCW 48.22.030(2) alone, as *Millers* purported to do.

Blackburn. Like the "2–car rule", however, it would have no genuine basis in the substantive policy foundations of the statute. In order to determine the validity of the liability coverage exclusion, we must look to those foundations.

The precursor of our present UIM statute, RCW 48.22-.030, was the uninsured motorist statute effective January 1, 1968. Laws of 1967, ch. 150, § 27, p. 737 (former RCW 48.22.030). That statute required companies writing automobile liability coverage in this state to provide, in conjunction with the liability policy, first party coverage which would directly compensate the insured who happened to be injured by a motorist who had failed to obtain liability coverage of his own. This court stated the policy behind this statute in *Touchette v. Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 494 P.2d 479 (1972):

> It was enacted to expand insurance protection for the public in using the public streets, highways and walkways and at the same time cut down the incidence and consequences of risk from the careless and insolvent drivers. The statute is both a public safety and a financial security measure. Recognizing the inevitable drain upon the public treasury through accidents caused by insolvent motor vehicle drivers who will not or cannot provide financial recompense for those whom they have negligently injured, and contemplating the correlated financial distress following in the wake of automobile accidents and the financial loss suffered personally by the people of this state, the legislature for many sound reasons and in the exercise of the police power took this action to increase and broaden generally the public's protection against automobile accidents.

*Touchette,* at 332.

In 1980, the uninsured motorist statute was expanded to require insurers to provide first party coverage to named insureds who happened to be injured by drivers carrying *insufficient* liability insurance. That is, the uninsured motorist insurance scheme was changed to an underinsured (UIM) motorist plan. An underinsured motor vehicle is defined as:

> [A] motor vehicle with respect to the ownership, maintenance, or use of which either no bodily injury or property damage liability bond or insurance policy applies at the time of an accident, or with respect to which the sum of the limits of liability

under all bodily injury or property damage liability bonds and insurance policies applicable to a covered person after an accident is less than the applicable damages which the covered person is legally entitled to recover.

RCW 48.22.030(1). The purposes and policies of the uninsured motorist statute, which *Touchette* articulated, were carried over to the underinsured motorist statute. *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 530–31, 707 P.2d 125 (1985).

It is important to recognize, however, that the purpose of the UIM statute is not just the same as that of its predecessor; it is even broader. The uninsured motorist statute protected only against at–fault motorists who were completely uninsured. Consequently, a victim could benefit from third party coverage or first party coverage, but never both. The former statute merely established a floor of insurance coverage below which no victim would fall, regardless of who caused his injuries. The adoption of the UIM statute fundamentally altered this arrangement. By extending first party coverage to victims injured by motorists with *insufficient* liability coverage, the Legislature made the accident victim's recovery of *both* third party coverage and first party coverage an *object* of the statute. Rather than merely setting a floor of coverage, the UIM statute adopted the broader goal of full compensation for victims of automobile accidents.[10]

This court recognized the policy of full compensation in *Elovich v. Nationwide Ins. Co.*, 104 Wn.2d 543, 550, 707 P.2d 1319 (1985). In *Elovich,* the insurer argued that the UIM statute should be interpreted to require only a "decreasing layer" of first party coverage; that is, an insured would be guaranteed only a minimum dollar

---

[10]In order to advance the policy of full compensation, the Legislature in 1980 also increased the minimum required amount of first party coverage. The uninsured motorist statute required insurers to offer first party coverage in the same amount as each policy's liability coverage. The UIM statute adopted the same approach. The minimum liability coverage required in this state prior to 1980 was $15,000. The Legislature raised that figure to $25,000 at the time it adopted the UIM statute. Laws of 1980, ch. 117, § 6, p. 364.

amount of combined liability and UIM benefits. This would have been consistent with practice under the former uninsured motorist statute, in that liability benefits would have offset the first party recovery. However, this court rejected the "decreasing layer" theory, holding that liability coverage should *not* offset UIM benefits. This court held instead that the UIM statute was intended to provide a "floating layer" of insurance coverage. UIM coverage is not available unless, and until, liability coverage has been exhausted, but it floats on top of liability coverage providing a full second layer of protection.

Examining the history of the UIM statute, this court focused on the words "damages which the covered person is legally entitled to recover" in RCW 48.22.030(1), which replaced an earlier, narrower definition of the benefits to be provided under the statute:

> The amendment shifted the statute's focus from the liability limits of "the insured's own policy," to the limits of "damages which the covered person is legally entitled to recover." The new language shifts the emphasis from minimum recovery defined by policy limits to *the total damages the party has suffered.*

(Italics mine.) *Elovich,* at 550. Therefore, this court held that automobile accident victims should be compensated for the full cost of their injuries, up to the UIM policy limits.

This court stated the principle of *Elovich* expressly and repeatedly in *Hamilton v. Farmers Ins. Co.,* 107 Wn.2d 721, 727, 733 P.2d 213 (1987): "The intent of the statute is to provide full compensation to the injured insured under an underinsured motorist policy." In *Hamilton,* the insurer argued that, where a UIM insured has settled with and released a tortfeasor, the insurer should be able to offset the amount of the (now unavailable) assets of the tortfeasor against UIM benefits. The theory was that the insured had impaired the insurer's right of subrogation. This court rejected that argument as fundamentally inconsistent with the policy of full compensation.

As the foregoing makes clear, subrogation rights cannot be engrafted onto the statutory scheme when they would thwart the purpose of fully compensating the injured insured.

*Hamilton,* at 731. And again:

The statutory aim of fully compensating the insured cannot be defeated by offsetting underinsurance coverage by tortfeasor assets that have not been received by the insured.

*Hamilton,* at 735.

This court invalidated a similar restrictive provision in *Elovich.* The insurer had inserted a clause which denied UIM coverage where the insured "'settles, without [the insurer's] written consent, with anyone who may be liable for the injury.'" *Elovich,* at 552. This court held that the consent to settlement clause was invalid because it violated "the statutorily enunciated public policy of protecting insureds from uncompensated injury." *Elovich,* at 553.

In *Britton,* this court considered a provision in a UIM policy which set off disability benefits received by the insured against UIM benefits. This court held that the reduction in benefits violated the principles articulated in *Touchette,* and was therefore void as against public policy.

[W]here the underinsured motorist endorsement does not provide protection to the extent mandated by the underinsured motorist statute, the offending portion of the policy is void and unenforceable. In other words, the Legislature has mandated a certain amount and kind of coverage; the insurer cannot avoid that obligation by a policy clause which has not been authorized by the Legislature.

(Footnote omitted.) *Britton,* at 531. *Millers* should be overruled primarily because, unlike *Britton, Elovich* and *Hamilton,* it fails to give the public policy in favor of full compensation the controlling weight to which it is entitled. This court does not take lightly its responsibility to precedent, but in an area of law governed by a new statute which is interpreted in light of still–developing principles, subsequent cases have their claims too. *United States v. Scott,* 437 U.S. 82, 95, 101, 57 L. Ed. 2d 65, 98 S. Ct. 2187 (1978), *cert. denied,* 440 U.S. 929 (1979). I am persuaded that the rule of *Millers* must yield "to the lessons of experience and

the force of better reasoning," *Burnet v. Coronado Oil & Gas Co.,* 285 U.S. 393, 405, 407–08, 76 L. Ed. 815, 52 S. Ct. 443 (1932) (Brandeis, J., dissenting). *Millers* was decided soon after the passage of the UIM statute, before this court had developed a solid body of precedent to guide its interpretation. This court relied on what seemed a reasonable construction of a similar statute in another jurisdiction. Since this court decided *Millers,* however, our cases under RCW 48.22.030 have consistently given primary consideration to the fact that the Legislature intended to provide full compensation to accident victims. As a result, *Millers* has turned out to be an indefensible anomaly in our case law.

This is apparent in the logic of the opinion itself. *Millers'* failure to give the fundamental policy of full recovery its due stands in marked contrast to the reasoning of *Britton, Elovich* and *Hamilton.* The opinion quotes a law review comment listing three differences between UIM coverage and liability coverage which purportedly justify the liability coverage exclusion:

> First, . . . the injured party has not paid a premium for coverage to this insurer. Thus, there is no danger the insurer will gain a windfall if it is not forced to pay under both provisions of the policy. Second, unlike uninsured motorist coverage, the honoring of this kind of exclusion in underinsured motorist coverage does not leave the injured party completely without compensation. He has already received some compensation pursuant to the liability coverage of the policy. Third, assuming the injured party has automobile insurance of his own, he should be able to collect additional amounts as a result of that policy's underinsured motorist coverage.

*Millers Cas. Ins. Co. v. Briggs,* 100 Wn.2d 1, 7, 665 P.2d 891 (1983) (quoting Comment, *Washington's Underinsured Motorist Statute: Balancing the Interests of Insurers and Insureds,* 55 Wash. L. Rev. 819, 827 (1980)). On due reflection, it is clear that none of these distinctions can justify the liability coverage exclusion.

The first distinction suggested by this passage simply misses the point. If the liability coverage exclusion is invalid, it is not because it results in a windfall to the

insurer. In most cases, it probably will not, since the insurer will set its premiums in a way that reflects the exclusions it has inserted in its policies. The real question is whether the insurer, in the process of writing exclusions and setting premiums, has unjustifiably restricted the scope of its coverage below the level which the Legislature has set as a condition for doing business in this state. Put another way, the question is whether the insurer has written its policy in a way that violates the public policy of full compensation for accident victims. If the insurer has done so, the fact that it has not received a windfall in the process is no justification.

The second point which *Millers* adopted from the law review comment does not merely fail to address the public policy behind the UIM statute; it completely contradicts it. As noted above, the former uninsured motorist scheme protected only against at-fault motorists who were completely uninsured. Receiving some liability coverage precluded any first party insurance recovery. The UIM statute fundamentally altered that scheme, providing both types of coverage in the interest of ensuring full compensation. *Millers'* suggestion that a victim's receiving "some" liability coverage can justify his not recovering UIM benefits amounts to saying we should return to "the bad old days". On the contrary, the Legislature has mandated UIM coverage *precisely* because "some" compensation under a liability policy is not enough. This court unambiguously rejected the notion of offsetting liability and UIM benefits in *Elovich*.

The third point of the law review comment also cannot justify the liability coverage exclusion, and for the same reason: it ignores the fundamental policy of the UIM statute. The fact that a victim might receive benefits from his own UIM policy is no justification for denying him the benefits of other UIM policies under which he would otherwise qualify. As Blackburn's case demonstrates, there is no

104

reason to suppose that recovery under a tortfeasor's liability policy and one's own UIM policy will satisfy the fundamental purpose of the UIM statute: providing full compensation to the accident victim.

Not only has *Millers* turned out to be an anomaly in the body of case law under the UIM statute; its effect in this case makes it plain that it also leads to indefensible results in practice. If a guest passenger is injured in an accident which is not the fault of his host driver, he may recover against his own UIM coverage, the liability coverage of the driver at fault and the host driver's UIM coverage. *See, e.g., Sears v. Grange Ins. Ass'n,* 111 Wn.2d 636, 762 P.2d 1141 (1988). However, if the same passenger is injured in an accident in which the host driver is at fault, the passenger is limited to recovery against the liability policy of that driver. Under the liability coverage exclusion, the passenger cannot recover against the UIM coverage of the driver at fault.

These varying results are inconsistent with the legislative purpose of the UIM statute: to provide full compensation to accident victims.

> We hesitate to overrule cases which have been in the books for some length of time, yet when we are confronted with a problem and are convinced that we have been wrong, it is our duty to do so.

*State v. Partridge,* 47 Wn.2d 640, 645, 289 P.2d 702 (1955). Because it violates public policy of full compensation established by the Legislature, the liability coverage exclusion must be invalidated. Accordingly, *Millers* should be overruled.

Safeco argues that permitting Blackburn to recover UIM benefits in these circumstances would convert UIM coverage to liability coverage. Safeco also contends that, since UIM coverage is substantially cheaper than liability coverage, Blackburn will receive a windfall if he recovers UIM benefits. I disagree.

The "conversion" argument of the insurer rests on the mistaken assumption that if one receives benefits under a third party's insurance contract, then one has illegitimately

received third party—*i.e.*, liability—insurance coverage. That does not follow. Although Blackburn seeks UIM benefits provided as part of a third party's policy, he nevertheless seeks only coverage of the kind mandated by the Legislature in RCW 48.22.030. What determines the nature of the coverage received—as "legitimate UIM" or "illegitimate liability" coverage—is not the configuration of the contract, but whether the coverage serves the purposes contemplated by the Legislature in mandating UIM insurance. Even if a victim is not in privity, he *can* fall within the class of victims which the Legislature sought to protect by means of the UIM statute.

The Safeco policy defines an "insured" person as any occupant of the covered vehicle. That is a broad definition, which Safeco drafted, and it encompasses Blackburn. While Blackburn did not pay for coverage of that scope, Evergreen did. Evergreen may not have contemplated extending this benefit to Lougee's passengers when it loaned the car to him; Blackburn may not have contemplated this benefit when he agreed to ride in the car Evergreen had insured. Nevertheless, Safeco offered UIM coverage as mandated by the Legislature, and it was paid for such coverage on all occupants of the automobile. As an occupant, and as a member of the class the Legislature sought to protect, Blackburn is entitled to UIM coverage.

The related argument that Blackburn's "conversion" of UIM to liability coverage would result in a windfall is equally flawed. There are two reasons why UIM insurance costs less than liability coverage. First, the risk insured against is different. The risk the UIM insurer takes on is not the risk of an accident's occurring, but the lower risk of an at–fault party's having inadequate liability coverage. Second, UIM coverage is a second line of defense, so to speak. It comes into play only after the first layer, liability

coverage, has been exhausted.[11] Consequently, it is less likely that the full amount of UIM benefits will have to be paid.

Blackburn is not asking for a windfall because his claim does not violate these assumptions. First, he asserted his claim only after establishing that his tortfeasor had insufficient liability insurance. Second, despite the fact that his injuries are severe and the cost will exhaust the UIM benefits, there is no question that Blackburn seeks only the "floating layer" of coverage mandated by *Elovich v. Nationwide Ins. Co.*, 104 Wn.2d 543, 707 P.2d 1319 (1985). Had his injuries been less severe, he would have been entitled to, and would have claimed, only a small portion of the UIM benefits at issue. Consequently, Blackburn is demanding only what the insurer, in accordance with its statutory duties, has contracted to provide.

## CONCLUSION

It is clear that the policy of full compensation is violated by the liability coverage exclusion which precludes adequate compensation in this case. The exclusion restricts the coverage mandated by the Legislature on a basis which the Legislature has not authorized. The liability exclusion should be rendered void and of no effect. Blackburn is entitled to the benefits of the UIM coverage provided by Evergreen's Safeco policy.

SMITH, J., concurs with DORE, J.

Reconsideration denied October 5, 1990.

---

[11]In fact, if the insured settles for less than the full amount of the liability coverage available, the insurer can offset the full amount of the available liability coverage against the UIM benefits payable. *Hamilton v. Farmers Ins. Co.*, 107 Wn.2d 721, 728, 733 P.2d 213 (1987).