[No. 27391-4-I.   Division One.   September 30, 1991.]

STONEWALL INSURANCE COMPANY, *Appellant*, v. SYLVIA C. DENMAN, *as Guardian, Respondent*.

*William R. Hickman, Donald C. Harrison,* and *Reed McClure,* for appellant.

*Douglas K. Smith* and *Albertson, Smith & Assoc.,* for respondent.

WEBSTER, J. — Bryan Denman, a passenger severely injured in a car accident, sought coverage under the underinsured motorist policy issued to the regular driver of the car. Stonewall Insurance Company appeals the summary judgment that the underinsured motorist policy issued to the regular driver covered Denman.

## FACTS

On August 22, 1984, Randolph Crozier, Charles Howerton, and Bryan Denman, three teenagers, were returning to Seattle after a trip to Vancouver, British Columbia. They were traveling in a Volkswagen owned by Jacklyn Crozier, the mother of Randolph Crozier. The Volkswagen was insured by Stonewall Insurance Company under a policy which had been issued to Randolph Crozier.

The three boys had been drinking. At some point south of the Canadian border and north of the city of Seattle, Crozier realized that he was too fatigued to drive safely and decided to pull over on the side of the road. Howerton volunteered to drive and, after some discussion, Crozier permitted him to take the wheel.

Just north of Seattle on Interstate 5, the Volkswagen left the traveled portion of the freeway, and collided with a parked car. The Volkswagen rebounded off the parked car and struck another vehicle, which was heading southbound. Following the accident, Howerton's blood alcohol level was tested at 0.15. During the change of drivers and at the time of the collision, Denman was asleep in the backseat.

The motor vehicle collision rendered Denman a spastic quadriplegic. The parties stipulated that his damages would greatly exceed any available insurance coverage. For the purposes of this appeal, the parties have assumed that Crozier's entrustment of the car to Howerton and Howerton's driving were negligent acts, which proximately caused Denman's injuries.

Howerton, the driver of the Volkswagen at the time of the accident, had no automobile liability insurance of his own. However, the Stonewall policy issued to Crozier provided liability coverage to Howerton as a permissive user of Crozier's car. The Stonewall policy also provided personal injury protection (PIP) for passengers up to the $10,000 limit. Stonewall settled Denman's lawsuit against Crozier and Howerton by paying the policy's $25,000 liability limit and the $10,000 limit of the PIP coverage. Stonewall denied

Denman coverage under Crozier's underinsured motorist endorsement.

The underinsured motorist portion of the Stonewall policy contained the following definition of the words "insured person":

As used in this Part:
(1) "Insured person" means:
   (a) You or a relative;
   (b) Any other person occupying your insured car;

The underinsured motorist portion also contained the following provision in its definition of the words "underinsured motor vehicle":

(3) "Underinsured motor vehicle," however does not include any vehicle . . .

. . . .

   (e) To which the Liability coverage of this policy applies.

Stonewall filed an action for declaratory judgment and moved for summary judgment based on the sworn declaration of its claims adjuster. Denman filed a cross motion for summary judgment, and both parties entered a "Stipulation of Facts". The trial court denied Stonewall's motion and granted Denman's, finding that Crozier's policy covered Denman.

## DISCUSSION

The sole issue on appeal is whether Denman is entitled to recover under Crozier's underinsured motorist endorsement. As originally adopted in 1967, RCW 48.22.030 required all new automobile liability policies to provide coverage " 'for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of *uninsured* motor vehicles'." *Millers Cas. Ins. Co. v. Briggs*, 100 Wn.2d 1, 3, 665 P.2d 891 (1983) (quoting Laws of 1967, ch. 150, § 27, p. 737). In 1980, the Legislature amended RCW 48.22.030 to eliminate this requirement, and required instead that all insurers offer *underinsured* motorist coverage, which their insureds could either accept for an additional premium or refuse in writing.

RCW 48.22.030(2), (4); *see Millers*, at 3-4. RCW 48.22.030(1) defines "underinsured motor vehicle" as:

a motor vehicle with respect to the ownership, maintenance, or use of which *either* no bodily injury or property damage liability bond or insurance policy applies at the time of an accident, *or* with respect to which the sum of the limits of liability under all bodily injury or property damage liability bonds and insurance policies applicable to a covered person after an accident is less than the applicable damages which the covered person is legally entitled to recover.

(Italics ours.) Thus, following the 1980 amendments, "underinsured" motorist coverage encompassed not only damages caused by uninsured motor vehicles, but also those caused by underinsured motor vehicles. *Millers*, at 4.

The traditional objective of uninsured motorist coverage has been to place the injured insured in the position he or she would have been in if the motorist causing the accident had been carrying "the *minimum* coverage required by the state financial responsibility laws." (Italics ours.) 1 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 1.8 (2d ed. 1990). By contrast, the traditional objective of underinsured motorist coverage has been to provide insureds coverage *beyond* the minimum coverage required by state financial responsibility laws, regardless of whether the motorist causing the accident was carrying liability insurance. 2 A. Widiss § 31.4. Accordingly, underinsured motorist coverage has been described as a "second layer" of coverage that "floats" on top of other sources of coverage. *Blackburn v. Safeco Ins. Co.*, 115 Wn.2d 82, 88, 794 P.2d 1259 (1990). Since RCW 48.22.030 lumps together uninsured and underinsured motorist coverage, leaving only one word to describe two different types of coverage that further different policy objectives, Washington courts have had to struggle to differentiate between situations in which an injured insured is entitled to only the *minimum* amount of statutorily required insurance, and situations in which an injured insured is entitled to the "second layer" as well.

The recent cases of *Blackburn* and *Millers* are directly on point. In *Blackburn*, the car involved in the accident was

owned by a car dealership, which had given a potential purchaser permission to drive the car. The driver failed to negotiate a curve and struck a power pole. The plaintiff, who was riding as a passenger in the car, was severely injured. The accident resulted solely from the negligence of the driver, and the car dealership was not liable to the passenger. The passenger recovered the limits of the driver's liability policy. *Blackburn*, at 84. Since the passenger presumably had no underinsured motorist coverage of his own and could not recover additional amounts under the car dealership's liability policy, he attempted to recover under the car dealership's underinsured motorist policy.

The car dealership's policy described insureds for the purpose of underinsured motorist coverage, in part, as follows:

1. You or any family member.
2. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.

*Blackburn*, at 84-85. Although the passenger was occupying an auto covered under the car dealership's underinsured motorist provision, and the driver from whom the passenger collected was underinsured, the car dealership's insurer denied the passenger underinsured motorist coverage because its policy excluded from the definition of underinsured motor vehicle "[a]ny vehicle [w]hich is a covered auto for LIABILITY INSURANCE." *Blackburn*, at 85.

■ Noting that the passenger was not a first party insured under the car dealership's policy, the *Blackburn* court held that the car dealership's underinsured motorist endorsement did not cover the passenger. *Blackburn*, at 92. The court explained that underinsured motorist policies typically divide "covered persons" into three separate classes: (1) "first party insureds" consisting of the person named in the policy and that person's family members, (2) "other insureds", or any person who is injured while occupying a vehicle covered under the policy, and (3) individuals who are entitled to recover damages because of bodily

injury sustained by either a first party or "other insured" (*i.e.*, a spouse claiming damages for loss of consortium). *Blackburn*, at 88-89. The court further explained that underinsured motorist policies afford first party insureds "coverage that applies at all times, whatever may be the insured's activity at the time of the accident." In contrast to first party insureds, "other insureds" are covered only while occupying a covered motor vehicle. *Blackburn*, at 89.

█ The court held that, with respect to "other insureds", Washington's underinsured motorist statute permitted exclusion of covered vehicles from the definition of an underinsured motor vehicle. It reasoned that the statute contemplated two distinct motor vehicles: "*the motor vehicle with respect to which uninsured motorist coverage is issued and the 'uninsured or underinsured' motor vehicle*". *Blackburn*, at 90 (quoting *Millers*, at 6 (quoting *Breaux v. Government Employees Ins. Co.*, 369 So. 2d 1335, 1338 (La. 1979))).

In practical terms, the distinction is one between first party insureds and "other insureds". A victim who is not a first party insured may be excluded from coverage under the underinsured portion of the policy, so long as the victim is provided coverage under the liability portion of the policy. *Tissell v. Liberty Mut. Ins. Co.*, 115 Wn.2d 107, 116-23, 795 P.2d 126 (1990) (Callow, J., concurring). However, a first party insured, who has elected to pay an additional premium for underinsured motorist coverage, cannot be denied coverage under the underinsured portion of the policy simply because he or she was operating or occupying a vehicle covered under the liability portion of the policy. *Tissell*, at 119-21 (Callow, J., concurring). Thus, as a general rule, one who has not purchased underinsured motorist coverage is eligible to recover from a liable insurer only the limits of the applicable liability policies; however, one who has purchased underinsured motorist coverage and has suffered damages that equal or exceed the limits of the applicable liability policies is eligible to recover not only the limits of the applicable liability policies, but also the limits of the underinsured motorist coverage.

In *Blackburn*, the court reiterated the policy distinctions between the former "uninsured" and present "underinsured" motorist statutes as applied to first party insureds and "other insureds". *Blackburn*, at 91. First, the injured "other insured" has not paid a premium to the named insured's insurer. Thus, there is no danger that the first party insured's insurer will receive a windfall if it does not pay the "other insured" under the underinsured motorist provision. Second, the refusal of the first party insured's insurer to provide underinsured motorist coverage to an injured person who was occupying a motor vehicle covered under the policy does not leave the injured "other insured" completely without compensation, since the "other insured" is covered under the policy's liability provision. Third, the injured party has the option of purchasing underinsured motorist coverage under his own automobile liability policy. *Blackburn*, at 88, 91; *Millers*, at 7.

The facts of the instant case are analogous to those in *Blackburn*. Denman was not a named insured in Crozier's liability policy. Rather, he was an "other insured". Similar to the underinsured motorist portion of the policy at issue in *Blackburn*, Crozier's underinsured motorist endorsement defined insured persons as those occupying Crozier's insured car, but excluded vehicles "to which the Liability coverage of this policy applies" from the definition of underinsured motor vehicle. Like the injured plaintiff in *Blackburn*, Denman could have but did not purchase underinsured motorist coverage of his own.

*Millers* is also directly on point. In that case, an intoxicated driver caused a single-car accident which killed one passenger and injured another. *Millers*, at 2; *see Blackburn*, at 90. The driver's insurer paid the limits of the driver's liability coverage, but denied coverage under the driver's underinsured motorist coverage. *Millers*, at 3. Neither of the passengers was a first party insured under the driver's policy. Since the policy excluded covered autos from the definition of underinsured motor vehicle, the passengers were insured only under the liability portion of the policy.

The *Millers* court held that the language of the insurance policy as applied to the facts of the case did not violate public policy, and that dual compensation was not required by public policy because of the distinctions between uninsured and underinsured coverage. *Millers*, at 7, 8; *see Blackburn*, at 91.

Denman's assertion that *Millers* and *Blackburn* are distinguishable because the passengers in those cases did not fit within the definition of "insured person" under the liability portion of the relevant policy is factually incorrect. In *Millers*, the passenger received the limits of the driver's liability policy, and was not eligible to recover under the driver's underinsured provision. In *Blackburn*, the passenger received the limits of the driver's liability, and was ineligible to recover under the car dealership's underinsured motorist provision. The rule is the same regardless of which insurance company actually pays under the liability portion of the policy: an insurer is not obligated by statute to provide a "second layer" of coverage to "other insureds".

Based on *Blackburn* and *Millers*, we conclude that the trial court erred in deciding that Denman was covered under Crozier's underinsured motorist endorsement. We realize that Crozier and Howerton may be obligated to pay out of their own pockets for Denman's damages exceeding the policy's liability limit. Underinsured motorist coverage, however, is not intended to provide additional liability coverage to all individuals to whom the first party insured may be liable. The Croziers could have elected to purchase a greater amount of liability coverage.

Denman claims that Stonewall's exclusion of the insured vehicle from the definition of "underinsured motor vehicle" violates RCW 48.22.030 with respect to a passenger who is an "insured person" under the liability portion of the policy. RCW 48.22.030(2) states:

> No . . . policy insuring against loss resulting from liability imposed by law for bodily injury . . . arising out of the ownership, maintenance, or use of a motor vehicle shall be issued . . . unless coverage is provided therein . . . for the protection of *persons insured thereunder* who are legally entitled to recover

damages from owners or operators of underinsured motor vehicles . . . except while operating or occupying a motor vehicle owned or available for . . . regular use by the named insured or any family member, and which is not insured under the liability coverage of the policy.

(Italics ours.) Denman asserts that the language "persons insured thereunder" in RCW 48.22.030(2) is inclusive of him, even though he was not a named insured under the Stonewall policy issued to Crozier. Based on the assumption that the quoted language refers to him, Denman asserts that he must be considered an insured under the policy's underinsured motorist endorsement since he is an insured under the liability provision of the policy issued to Crozier.

█ Neither *Millers*, *Blackburn*, nor *Tissell* construed the meaning of "persons insured thereunder". However, Denman's assertion that the phrase refers to him is inconsistent with subsection (4) of RCW 48.22.030. That subsection permits *"[a] named insured or spouse"* to reject the coverage specified in subsection (2) in writing. (Italics ours.) Denman's proffered interpretation conflicts with *Millers* and *Blackburn*. In *Millers*, the court stated that "[underinsured motorist coverage], like uninsured motorist coverage, is a *first party coverage* that individuals may purchase to protect themselves against other drivers." (Italics ours.) *Millers*, at 4. In *Blackburn*, the court reiterated that the underinsured motorist coverage purchased by named insureds affords *"first party* coverage that applies at all times, whatever may be the insured's activity at the time of the accident." *Blackburn*, at 89. We conclude that "persons insured thereunder" in RCW 48.22.030(2) refers only to first party insureds. Therefore, Stonewall's policy, as applied to Denman, did not violate the statute.[1]

---

[1]Denman also asserts that the definition of underinsured motor vehicle in Stonewall's underinsured motorist endorsement violates RCW 48.22.030(1), which defines "underinsured motor vehicle". Presumably, Denman's counsel bases this argument, as well, on the assumption that "persons insured thereunder" includes "other insureds", and on the fact that the statutory definition of underinsured motor vehicle includes both uninsured and underinsured motor vehicles. We reject Denman's argument.

■ Denman also asserts that Stonewall's exclusion of the insured vehicle from the definition of "underinsured motor vehicle" violates RCW 48.22.030 with respect to a passenger who has actions against both the operator and driver of the vehicle. Denman was covered under the liability portion of Crozier's policy and would have been covered under the liability portion of Howerton's policy if Howerton had been insured. Regardless of the number of tortfeasors and liability policies covering Denman, however, he could not recover under the underinsured motorist provisions of any of the tortfeasors unless the *contract* between the tortfeasor and the tortfeasor's insurer said that he could. The policy forming the contract between Crozier and his insurer did not provide underinsured coverage to Denman.

The judgment is reversed.

GROSSE, C.J., and SCHOLFIELD, J., concur.