[No. 29744-9-I.    Division One.    February 1, 1993.]

CORA CHURCHILL, *Individually and as Personal Representative, Appellant,* v. NEW HAMPSHIRE INSURANCE COMPANY, *Respondent.*

*Bradley A. Maxa* and *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim,* for appellant.

*William J. Price* and *Karr Tuttle Campbell,* for respondent.

BAKER, J. — Jason Churchill's estate seeks to recover underinsured motorist (UIM) benefits under an insurance policy issued by New Hampshire Insurance Company (New Hampshire). We hold that Churchill is precluded from recovering UIM benefits by an exclusion clause in the policy and therefore affirm the trial court's order granting New Hampshire's motion for summary judgment.

## I

Sixteen-year-old Jason Churchill died as a result of injuries sustained as a passenger in a 1-vehicle accident. The driver obtained possession of the vehicle from its owner through false representation, and did not have a driver's license or insurance.

The truck was insured by New Hampshire, but its liability policy did not cover the driver of the vehicle because he was using the truck outside the scope of the owner's permission.

The decedent's mother, Cora Churchill, filed a claim under the New Hampshire policy for UIM benefits. She argued that because New Hampshire's liability policy did not cover the driver, the vehicle was underinsured. New Hampshire denied the claim based on the following "liability coverage" exclusion in its UIM endorsement:

> However, "underinsured motor vehicle" does not include any vehicle: ·
>
> . . . .
>
> (2) which is a covered "auto" for LIABILITY COVERAGE.

Churchill appeals the trial court's order granting New Hampshire's motion for summary judgment.

## II

■ An underinsured motor vehicle is defined by statute as:

a motor vehicle with respect to the ownership, maintenance, or use of which either no bodily injury or property damage liability bond or insurance policy applies at the time of an accident, or with respect to which the sum of the limits of liability under all bodily injury or property damage liability bonds and insurance policies applicable to a covered person after an accident is less than the applicable damages which the covered person is legally entitled to recover.

RCW 48.22.030(1). The purpose of the statute is to allow

an injured party to recover those damages which the injured party would have received had the responsible party been insured with liability limits as broad as the injured party's statutorily mandated underinsured motorist coverage limits.

*Blackburn v. Safeco Ins. Co.*, 115 Wn.2d 82, 87, 794 P.2d 1259 (1990) (quoting *Hamilton v. Farmers Ins. Co.*, 107 Wn.2d 721, 727, 733 P.2d 213 (1987)).

In *Blackburn*, our Supreme Court considered whether a similar UIM exclusion violates Washington's UIM statute, RCW 48.22.030. In that case, the plaintiff was seriously injured as a passenger in a car owned by Evergreen Chrysler Plymouth, Inc. Evergreen's liability policy did not cover the driver due to a policy exclusion. Because the costs of the plaintiff's injuries exceeded the amount collected from the driver's separate insurance policy, he sought to recover UIM benefits from Evergreen's insurer, Safeco.

As a passenger in a "covered auto", the plaintiff qualified as an "other insured" under the Safeco policy. Safeco denied Blackburn UIM benefits based on a clause in the UIM endorsement which excluded from the definition of an underinsured motor vehicle: "Any vehicle [w]hich is a covered auto for LIABILITY INSURANCE." *Blackburn*, 115 Wn.2d at 85. The Supreme Court held that the policy exclusion unambiguously excludes the vehicle which is covered for liability from the definition of an underinsured motor vehicle, as to claims by "other insureds". *Blackburn*, 115 Wn.2d at 90. The court stated:

Safeco . . . should not be required to provide UIM coverage to an "other insured" to whom Safeco had denied liability insur-

ance. In effect, such a requirement would transform the UIM insurance into the denied liability insurance. Common sense and the consuming public's general understanding of coverage do not dictate a contrary result.

*Blackburn*, 115 Wn.2d at 92.

In reaching this decision, the Supreme Court reexamined its earlier decision in *Millers Cas. Ins. Co. v. Briggs*, 100 Wn.2d 1, 665 P.2d 891 (1983). *Millers* involved a single-car accident in which one passenger was killed and another injured. The insurer paid the limits of the driver's liability insurance but denied claims brought under the UIM portion of the policy. The insurance policy in that case excluded from the definition of an underinsured vehicle "(4) an automobile or trailer to which the liability coverage of this policy applies." *Millers*, 100 Wn.2d at 3. The court held that this exclusion precluded recovery by the claimants under the UIM portion of the policy, reasoning as follows:

> The owner of a vehicle purchases liability insurance to, among other things, protect passengers in the vehicle from his, or another driver's, negligent driving. He purchases underinsured motorist coverage to protect himself and others from damages caused by another vehicle which is underinsured. An insured wishing to avoid personal liability, and protect his passengers, may simply increase the liability insurance. The result of dual recovery in the instant case would transform underinsured motorist coverage into liability insurance. This result would cause insurance companies to charge substantially more for underinsured motorist coverage in order to match the cost of that coverage with the presently more expensive liability coverage. This increase in cost would discourage consumers from purchasing underinsured coverage, an important protection presently available for a minimal cost.

*Millers*, 100 Wn.2d at 8.

In both *Millers* and *Blackburn*, the Supreme Court recognized three public policy arguments supporting the denial of UIM coverage:

> First, . . . the injured party has not paid a premium for coverage to this insurer. Thus, there is no danger the insurer will gain a windfall if it is not forced to pay under both provisions of the policy. Second, unlike uninsured motorist coverage, the honoring of this kind of exclusion in underinsured motorist coverage does not leave the injured party completely without compensation. He has already

received some compensation pursuant to the liability coverage of the policy. Third, assuming the injured party has automobile insurance of his own, he should be able to collect additional amounts as a result of that policy's underinsured motorist coverage.

*Millers*, 100 Wn.2d at 7; *Blackburn*, 115 Wn.2d at 91 (quoting Comment, *Washington's Underinsured Motorist Statute: Balancing the Interests of Insurers and Insureds*, 55 Wash. L. Rev. 819, 827 (1980)).

Churchill argues that the present case is distinguishable from *Blackburn*. She first relies upon the difference in the language of the exclusion clauses. The exclusion in the New Hampshire policy reads as follows:

However, "underinsured motor vehicle" does not include any vehicle:

. . . .

(2) which is a covered "auto" for LIABILITY COVERAGE.

The Safeco policy exclusion in *Blackburn* stated:

However, "underinsured motor vehicle" does not include any vehicle:

. . . .

b. Which is a covered auto for LIABILITY INSURANCE.

Churchill contends that New Hampshire's exclusion, by use of the phrase liability *coverage* as opposed to liability *insurance*, disclaims UIM benefits only to the extent that insurance proceeds actually were paid out under the liability portion of the policy. According to this argument, the phrase liability *coverage* connotes actual payment for a loss under the policy. We disagree.

Black's Law Dictionary (5th ed. 1979) gives the following definition of the term *coverage*: "In insurance, amount and extent of risk covered by insurer." Black's further defines *liability insurance* as: "Contract by which one party promises on consideration to compensate or reimburse other if he shall suffer loss from specified cause or to guaranty or indemnify or secure him against loss from that cause." Both definitions broadly contemplate the scope of coverage provided by the insurer and do not support the argument that the phrase "liability coverage" is more narrowly defined than "liability insurance".

Moreover, if the term "coverage" does connote actual payment for a loss under the policy, then the vehicle in question here would not be a "covered auto" because New Hampshire did not make a payment under the policy. It would follow that if the vehicle were not a "covered auto", Jason Churchill would not be an "other insured" and would have no basis for making any claim under the UIM provision of the policy. Thus, this argument is fundamentally flawed.

Churchill next attempts to distinguish *Blackburn* because the exclusion in the New Hampshire policy is "buried", in contrast to the exclusion in *Blackburn*, which was placed at the beginning of the UIM endorsement under a section entitled "Words and Phrases with Special Meaning".[1]

We disagree. While Churchill correctly notes that the New Hampshire exclusion is located at the very end of the endorsement, the clause is not fairly characterized as "buried". The endorsement is only 2½ pages long, and there is nothing on its face to suggest an effort to bury that clause.[2]

Finally, Churchill argues that this case is distinguishable from *Blackburn* because her minor son could not have pur-

---

[1]This argument would be more persuasive if the claimant were a named insured in the policy. Here, however, Churchill cannot argue that she or her son were misled by the policy because they were not parties to the contract.

[2]Churchill further argues that the exclusion clause is inherently ambiguous because other clauses within the endorsement imply that a "covered auto" also may be an underinsured auto. These paragraphs provide as follows:

2. Any amount payable for damages which the "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury" or "property damage" caused by an "accident" shall be reduced by all sums paid by or for anyone who is legally responsible, including all sums paid under this Coverage Form's LIABILITY COVERAGE.

3. Any payment under this coverage will reduce any amount an "insured" is entitled to recover for the same damages under this Coverage Form's LIABILITY COVERAGE.

These provisions allow the insurer to offset the "other insured's" recovery under either the UIM portion of its policy or the liability portion of the second driver's policy from claims against the driver of the covered auto. These clauses are not inconsistent with the UIM exclusion at issue here. Thus, we disagree with Churchill's contention that these paragraphs render the exclusion clause ambiguous.

chased his own UIM insurance. Churchill contends that the fact Blackburn could have purchased UIM benefits from his own insurance company weighed heavily in the Supreme Court's decision to deny UIM coverage in that case.

However, the fact that Blackburn did not carry UIM coverage of his own despite an apparent ability to do so was one of several factors considered by the court in reaching its decision.[3] Nothing in the *Blackburn* opinion indicates that this factor was itself determinative. We hold that even if Jason Churchill were unable to purchase UIM insurance at the time of the accident, this factor alone would be insufficient to hold the exclusion provision to be violative of public policy. Neither the driver nor Jason Churchill paid a premium for coverage to this insurer. As the court in *Blackburn* stated:

> [a]lthough the public is served by maximizing the extent of the protection afforded by the coverage, the insurance company is not required to provide the coverage for free. In providing this coverage, insurance companies should charge and the insured should pay an appropriate premium.

*Blackburn*, 115 Wn.2d at 88.

Finally, Churchill relies on dictum from *Stonewall Ins. Co. v. Denman*, 63 Wn. App. 123, 816 P.2d 1252 (1991) to support her position. In *Denman*, the plaintiff was seriously injured in a 1-vehicle accident. The driver of the vehicle did not have separate insurance but was covered under the vehicle owner's policy as a permissive user of the car. Stonewall paid Denman the policy's $25,000 liability limit and the $10,000 limit of the PIP coverage but denied coverage based on an exclusion in the UIM endorsement which prescribed UIM coverage for any vehicle to which the liability coverage portion of the policy applies. This court held that Denman

---

[3]In reaching its decision, the *Blackburn* court noted three basic rationales: (1) the insurance policy contained a clause which excluded covered autos from the definition of an underinsured vehicle, (2) the public policy arguments articulated in *Millers* did not compel recovery under the facts of the case, and (3) common sense and the public's general understanding of coverage comport with the result reached.

was not entitled to recover under the vehicle owner's UIM endorsement. *Denman*, 63 Wn. App. at 131.

In reaching this conclusion, the court stated, "[a] victim who is not a first party insured may be excluded from coverage under the underinsured portion of the policy, so long as the victim is provided coverage under the liability portion of the policy." *Denman*, 63 Wn. App. at 129 (citing *Tissell v. Liberty Mut. Ins. Co.*, 115 Wn.2d 107, 116-23, 795 P.2d 126 (1990) (Callow, C.J., concurring)).[4] Churchill argues that because New Hampshire denied coverage under the liability portion of the policy, *Denman* compels the conclusion that UIM benefits must be available under the policy.

■ We reject the notion that under *Blackburn*, an "other insured's" recovery under the UIM endorsement of an insurance policy turns on whether or not liability insurance was paid out under that policy. Accordingly, we disagree with the dicta to the contrary in *Denman*. We therefore hold that under *Blackburn*, Churchill's status as one other than a named insured precludes recovery of UIM benefits under the policy.[5]

Affirmed.

WEBSTER, C.J., and GROSSE, J., concur.

Review denied at 121 Wn.2d 1030 (1993).

---

[4] In *Tissell*, Chief Justice Callow wrote in the concurring opinion, "The majority leaves out the crux of *Millers*: a victim who is not a *named* insured can be excluded from recovering against the UIM portion of a policy *where he is compensated by the policy's liability coverage*." (Italics ours.) *Tissell*, 115 Wn.2d at 119-20.

[5] Churchill also relies on *First Nat'l Ins. Co. v. Perala*, 32 Wn. App. 527, 648 P.2d 472, *review denied*, 98 Wn.2d 1002 (1982). The Supreme Court has repeatedly emphasized the important distinctions between uninsured and underinsured motorist insurance. *See, e.g., Millers*, 100 Wn.2d at 7. In light of these distinctions, and in light of case law more directly on point, *Perala* is inapposite.